**Rosella M. POTKOVICK and Texahoma Realty Development, Ltd., Appellants,**

v.

**REGIONAL VENTURES, INC., Appellee.**

No. 11–94–060–CV.

Court of Appeals of Texas, Eastland.

July 20, 1995.

Rehearing Overruled Sept. 21, 1995.

---

McCord Wilson, Kelly Gill, McMahon, Surovik, Suttle, Buhrmann, Cobb & Hicks, Abilene, for appellants.

Jerry L. Hiersche, Jay M. Rosenberg, Miller, Hiersche, Martens, Hayward, and Drakeley, Dallas, for appellee.

Before ARNOT, C.J., and WRIGHT and McCLOUD, JJ. (Assigned).

ARNOT, Chief Justice.

The issue presented in this appeal is whether the Texas Long Arm Statute, TEX. CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986), authorizes the exercise of *in personam* jurisdiction over a nonresident who owns real estate in Texas. We conclude that mere ownership of the real property alone is insufficient to bestow *in personam* jurisdiction: the ownership of the real property must be the subject of the underlying suit.[1] See *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

This is an appeal from a special appearance under TEX.R.CIV.P. 120a. Rosella Potkovick (a resident of New York) and Texahoma Realty Development, Ltd. (a New York corporation) sued James E. Jordan (an Oklahoma resident) and West Bay, Inc. and Regional Ventures, Inc. (both Oklahoma corporations) alleging breach of contract and tortious interference with the ownership and the operation of the Fairmont Apartments located in the city of Abilene, Taylor County, Texas. All of the defendants filed special appearances pursuant to Rule 120a. Potkovick nonsuited her actions against Jordan and West Bay prior to the special appearance hearing. The trial court granted Regional Ventures' plea to the jurisdiction and dismissed the cause. We reverse and remand.

■ Before *in personam* jurisdiction can be established over a nonresident, the plaintiff must satisfy the federal constitutional due process requirements in *International Shoe Company v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The plaintiff has to show whether the non-resident defendant has purposefully established "minimum contacts" with the forum state and, if so, whether the exercise of jurisdiction comports with the notions of "fair play and substantial justice." *International Shoe Company v.*

1. See also *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878); *Schlobohm v. Schapiro,* 784 S.W.2d 355 (Tex.1990); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex.1977); *Motiograph, Inc. v. Check–Out Systems, Inc.,* 573 S.W.2d 606 (Tex.Civ.App.—Eastland 1978, writ ref'd); *Pizza Inn, Inc. v. Lumar,* 513 S.W.2d 251 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.).

*Washington, supra.* Therefore, we must review the jurisdictional facts to determine the nature of the underlying causes of action. If these facts establish that the controversy involves the ownership and operation of real property located in Texas, then the trial court did have jurisdiction.[2]

Potkovick's pleadings alleged the following causes of action and jurisdictional facts. Life Investors Insurance Company of America owned the Fairmont Apartments. Life Investors agreed to sell the property to Potkovick for $2,125,000 upon the following terms: Potkovick paid $20,000 upon the execution of the contract of sale; she agreed to pay $280,000 in cash at closing; and she agreed to execute a note payable to Life Investors for the balance of $1,825,000 which was to be secured by a first lien deed of trust on the property.

Potkovick sought the additional financing she needed for the balance to be paid at closing. Her pleadings alleged that Jordan, an Oklahoma resident, agreed to loan Potkovick, a New York resident, $250,000 and agreed to take a second lien on the property. This contract was negotiated and executed in the State of New York. Citing tax considerations, Jordan renegotiated the loan shortly before the closing.

Upon completion of the sale, Life Investors sold the property to Potkovick and received a first lien deed of trust. Potkovick then sold the property to Texahoma Realty, the New York corporation created especially for this transaction. Potkovick owned all of the outstanding shares of Texahoma. Next, to secure the loan from Jordan, Potkovick transferred all of the shares in Texahoma Realty to West Bay, a closely held Oklahoma corporation owned by Jordan. The transferred stock was subject to a repurchase agreement which Potkovick characterized in her pleadings as a second mortgage to secure the loan from Jordan. For venue purposes, Potkovick alleged in her petition that her cause of action against the defendants was for recovery of real property under TEX.CIV.PRAC.

& REM.CODE ANN. § 15.011 (Vernon 1986).

Potkovick negotiated new loans to pay off the first and second mortgages. She alleged that Jordan, West Bay, and Regional Ventures (collectively referred to as the defendants in the pleadings), using valuations generated by the new lenders, embarked upon a scheme to seize control and ownership of the apartments. Potkovick was not able to repurchase the stock of Texahoma Realty held by West Bay. Regional Ventures, an Oklahoma corporation owned by Jordan, purchased the first lien from Life Investors and assumed daily operations of the apartment's business. While she also alleged that the defendants had tortiously interfered with her contractual relationships with Texahoma Realty, Life Investors, and the new lenders, Potkovick asked for specific performance of her contractual rights to allow her to pay off the second mortgage and repurchase the property.

■ In its affidavit, Regional Ventures stated: that it was an Oklahoma corporation; that it did not maintain a place of business in Texas or employ any agents in the State; that it did not engage in business in Texas; that it had not committed any tort within the State; that the contract that forms the basis of Potkovick's claims was not executed in Texas; and that the contract recited that it is performable in Oklahoma. However, Regional Ventures also stated in its affidavit that it did own real property in Taylor County and that the property was managed for Regional Ventures by another Oklahoma corporation. Regional Ventures argues that its jurisdictional fact situation is analogous to and controlled by *Guardian Royal Exchange Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223 (Tex.1991), and *NCNB Texas National Bank v. Anderson,* 812 S.W.2d 441 (Tex.App.—San Antonio 1991, no writ).

*Guardian Royal* is the most recent case in which our supreme court has examined the issue of jurisdiction. However, unlike the

---

**2.** Rule 120a(3) provides that the trial court shall determine the special appearance on the basis of pleadings, stipulations, affidavits, the results of the discovery process, and any oral testimony.

Because there were no stipulations, discovery, or oral testimony in this case, we will review the pleadings and the affidavits.

case before us, *Guardian Royal* examined the rules applicable to determining whether there were sufficient contacts with the forum state to establish "minimum contacts" under *International Shoe* involving a fact situation of a "single contact contract." Although this case involves a contract negotiated and executed in New York between residents of New York and Oklahoma, this court must look at the underlying cause of action.[3] See *K.D.F. v. Rex,* 878 S.W.2d 589 (Tex.1994). In this case, the underlying cause of action was the determination of the ownership and possession of real property situated in Texas.[4]

*NCNB* is also factually distinguishable. In *NCNB,* the suit was for the collection of a promissory note, not for title to real property. In *NCNB,* the court recites as one of the unchallenged findings of fact made by the trial court: "appellee does not own any real property in the State of Texas."

Next, Regional Ventures asserts that there is no jurisdiction because it was not a party to any contract with Potkovick, Texahoma, Jordan, or West Bay. Regional Ventures contends that it purchased Life Investors' position in the first lien and that all of Potkovick's dealings in the stock repurchase agreement were with Jordan. First, in her pleadings, Potkovick made assertions against all of the defendants collectively. Second, if no other facts are developed other than those in the pleadings before us, Regional Ventures may well prevail in a trial on the merits. However, that is not the issue before this court. We are only concerned with jurisdiction.

 Finally, Regional Ventures makes two procedural objections to the sufficiency of Potkovick's jurisdictional facts.[5] First,

Regional Ventures complains that Potkovick has failed to secure findings of fact from the trial court. Therefore, Regional Ventures argues that the appellate court must affirm the judgment citing *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977), as authority. In a nonjury trial where there are no findings of fact, all questions of fact are presumed to be found in support of the judgment. *Lassiter v. Bliss, supra.* However, when as in this case the controlling facts are established and unchallenged, no findings of fact are necessary.

Second, Regional Ventures argues that Potkovick's affidavits filed in opposition to its special appearance under Rule 120a were not properly before the trial court. Potkovick hired Capital Assets, Inc., an Oklahoma corporation, to manage the Fairmont Apartments. Cecil V. Jones, an officer of the corporation, executed an affidavit for the purpose of determining jurisdiction. In his affidavit, Jones stated that Regional Ventures began to assert its rights to manage the daily operations of the apartment's business. The affidavit recited that Jordan, on behalf of Regional Ventures, established a checking account with the First National Bank of Abilene and made wire transfers to and from this account from Oklahoma. Also, the affidavit stated that Regional Ventures opened its own account for utility service with Lone Star Gas Company on behalf of the apartment. Potkovick offered this affidavit as evidence of minimum contacts that Regional Ventures had with our state. In addition to Jones' affidavit, Potkovick filed an affidavit which generally controverted all of the allegations in the affidavits challenging the jurisdiction.

---

3. In *Guardian Royal,* the court stated:

> In applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test, including the Texas formula, must be avoided. *Schlobohm,* 784 S.W.2d at 358. See *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185. In addition, Texas courts should strive to utilize a realistic approach when applying the jurisdictional formula. See *Burger King,* 471 U.S. at 478–79, 105 S.Ct. at 2185. The jurisdictional formula is a useful jurisdictional checklist which ensures that all aspects of the

necessary analysis have been considered. See *Schlobohm,* 784 S.W.2d at 358.

4. Regional Ventures argues that *Guardian Royal* has done away with the "situs" or "locale rule" in determining jurisdiction. We disagree. Nothing in this court's opinion conflicts with the court's decision or its discussion in *Guardian Royal.*

5. See Louis S. Muldrow & Kendall M. Gray, *Treading The Mine Field: Suing and Defending Non–Residents in Texas State Courts,* 46 BAYLOR L.REV. 581 (1994).

■ Regional Ventures objected to these affidavits as being filed within seven days of trial in violation of Rule 120a(3) which provides:

The affidavits, if any, *shall be served at least seven days before the hearing,* shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify. (Emphasis added)

Regional Ventures argues that Rule 120a requires strict compliance citing *International Turbine Service, Inc. v. Lovitt,* 881 S.W.2d 805 (Tex.App.—Fort Worth 1994, writ den'd); *Clements v. Barnes,* 822 S.W.2d 658 (Tex. App.—Corpus Christi 1991), *rev'd on other grounds,* 834 S.W.2d 45 (Tex.1992); *Slater v. Metro Nissan of Montclair,* 801 S.W.2d 253, 255 (Tex.App.—Fort Worth 1990, writ den'd); *Portland Savings & Loan Association v. Bernstein,* 716 S.W.2d 532 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *cert. den'd,* 475 U.S. 1016, 106 S.Ct. 1200, 89 L.Ed.2d 313 (1986). We agree. However, these cases examine the substantive requirements of the affidavits required by Rule 120a, not the timeliness of the filing of the affidavits. Rule 120a also states:

Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or *may make such other order as is just.* (Emphasis added)

Although strict compliance is required, it is apparent that the trial court does have some discretion under Rule 120a to enter other orders as are just. Otherwise, under Regional Ventures' interpretation, a movant under Rule 120a could wait until seven days before the hearing to file its affidavits preventing the opposition from filing controverting affidavits.

Regional Ventures objected to the timeliness of the affidavit in the trial court. The trial court did not make a formal ruling on Regional Ventures' objection. The court stated its intention to get to the merits of the question of jurisdiction. It would appear from the record that the court considered the affidavits in its determination that there was no jurisdiction. Regardless, Regional Ventures own affidavit and Potkovick's pleadings are sufficient to establish jurisdiction.[6]

By their own affidavit, Regional Ventures acknowledged that it owned and operated real property in Texas. The pleadings alleged a cause of action for the ownership and possession of the property. We conclude that the trial court erred in ruling that it did not have jurisdiction to hear this matter.

The judgment of the trial court is reversed, and the cause is remanded for trial.

McCLOUD, Chief Justice, Retired, Court of Appeals, Eastland, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

WRIGHT, Justice, not participating.

---

6. See *St. Gelais v. Jackson,* 769 S.W.2d 249 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Texas Commerce Bank National Association v. Interpol '80 Limited Partnership,* 703 S.W.2d 765 (Tex. App.—Corpus Christi 1985, no writ); *Rosemont Enterprises, Inc. v. Lummis,* 596 S.W.2d 916 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ).