### CITY OF EL PASO

#### v.

**Carlos Salas–Porras SOULE a/k/a Carlos Salas–Porras S.; Carlos Salas–Porras Romero a/k/a Carlos Salas–Porras R.; Virginia Salas–Porras de Cano; Aurora Salas–Porras Romero; Elvira Salas–Porras de Lugo; Patricia Medrano Hernandez; Esther Salas–Porras; Rukubi S.A. de C.V.; New World Trading Co. a/k/a New World Trading Co. Ltd.; Waks Development Corp.; and Parallax Corporation N.V. a/k/a Parallax N.V.**

#### No. EP–97–CA–458–DB.

United States District Court, W.D. Texas, El Paso Division.

Jan. 22, 1998.

814

H. Christopher Mott, El Paso, TX, for Plaintiff.

James R. Dennis, El Paso, TX, for Defendants.

T.O. Gilstrap, El Paso, TX, for Defendant Esther Salas–Porras.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendants Carlos Salas–Porras Soule ("Salas–Porras Jr."), Carlos Salas–Porras Romero ("Salas–Porras Sr."), Virginia Salas–Porras de Cano ("V.Salas–Porras"), Aurora Salas–Porras Romero ("A.Salas–Porras"), the Estate of Elvira Salas–Porras de Lugo ("E.Salas–Porras"), Patricia Medrano Hernandez ("Medrano"), Rukubi S.A. De C.V. ("Rukubi,")[1], New World Trading Co. a/k/a New World Trading Co. Ltd. ("New World"), and Waks Development Corp.'s ("Waks") Motion to Dismiss for Lack of Personal Jurisdiction filed on November 24, 1997, in the above-captioned cause. The Court also considered Defendant Esther Salas–Porras' ("Es.Salas–Porras") Motion to Dismiss Pursuant to Rule 12(b)(2) filed on November 24, 1997. Plaintiff filed its Response on December 8, 1997.

In the matter before the Court, Plaintiff is seeking to collect on a final judgment rendered in its favor against Parallax Corporation N.V., a/k/a Parallax N.V. ("Parallax"), in a Texas state court condemnation proceeding. Through its Complaint, Plaintiff is attempting to recover certain funds that were held in the registry of the County Court at Law, El Paso County, Texas ("state court") in connection with the condemnation proceedings, and other funds of Parallax. These funds allegedly were transferred to Defendants during the pendency of state court litigation. Plaintiff relies on several legal theories for the basis of its claims, including fraudulent transfer, civil conspiracy, fraud,

conversion, and alter ego.[2] After due consideration, the Court is of the opinion that the Motions should be denied for the reasons set forth below.

### FACTS[3]

Salas–Porras Jr. and Salas–Porras Sr. formed Parallax as a Netherlands Antilles corporation in 1978. Salas–Porras Jr. was appointed and has acted as managing director of Parallax since its inception. Salas–Porras Sr. also was appointed as managing director of Parallax. Defendants Salas–Porras Jr., Salas–Porras Sr., E. Salas–Porras, V. Salas–Porras, and A. Salas–Porras have at various time been shareholders of Parallax. Defendants Medrano and Es. Salas–Porras are relatives of the shareholders or directors of Parallax. All the individual Defendants are members of the same family and are related to one another by blood or marriage. Defendants Rukubi, New World, and Waks are corporations affiliated with Salas–Porras Jr., Salas–Porras Sr., and Parallax through common ownership, common directors and officers, and through common assets and accounts. Parallax has maintained bank accounts with MBank N.A. ("MBank") and State National Bank ("State National") in El Paso;[4] Dean Witter Reynolds, Inc. ("Dean Witter") in El Paso; and Union Bank of Switzerland in New York ("Union Bank").

Shortly after its formation, Parallax purchased certain real property at the intersection of Interstate 10 and Americas Avenue in El Paso, Texas ("Americas property") for about $1.4 million. Subsequently, Plaintiff sought to condemn a portion of the Americas property for a flood control project. Plaintiff

1. Plaintiff spells the name of this Defendant as follows: "Rukibi." However, Defendant spells its name as "Rukubi." The Court adopts the latter spelling.

2. Plaintiff originally filed this cause on September 30, 1997, in the 327th District Court of El Paso, County, Texas, cause number 97–3268. By Notice of Removal filed on October 30, 1997, Defendants removed the cause to this Court on diversity grounds.

3. What follows is a summary of the factual allegations in the City's Complaint. For purposes of determining jurisdiction without an evidentiary

hearing, uncontroverted allegations in a plaintiff's complaint are to be taken as true. See, e.g., WNS, Inc. v. Farrow, 884 F.2d 200, 204 (5th Cir.1989). The Court also considered Declarations of Es. Salas–Porras, Salas–Porras Jr., Salas–Porras Sr., V. Salas–Porras, A. Salas–Porras, E. Salas–Porras, Medrano, Rukubi, New World, and Waks submitted with the Motions and briefs, and the duly authenticated exhibits attached to Plaintiff's Response.

4. MBank later changed its name to State National Bank ("State National"). As a side note, State National has since changed to Norwest Bank.

offered Parallax about $1.6 million as compensation for the condemnation, but Parallax refused the offer. Consequently, Plaintiff filed suit against Parallax in May 1991, in cause number 91–5809, County Court at Law, El Paso County, Texas, regarding the condemnation. In August 1991, the Special Commissioners Court awarded damages to Parallax in the amount of about $2.9 million, less past due taxes, for a net award of approximately $2.5 million.

Plaintiff and Parallax objected to the award and sought to have the condemnation damages determined by a jury. As required by law, Plaintiff deposited about $2.9 million—the amount of the Special Commissioner's award—in cash into the registry of the state court ("Registry funds") in August 1991. At Parallax's request, on September 12, 1991, the state court ordered that Registry funds of approximately $2.5 million be disbursed to Parallax. Parallax deposited these funds into its account maintained at MBank in El Paso. Salas–Porras Jr. and Salas–Porras Sr., the managing directors of Parallax, were signatories on the MBank account.

The condemnation proceeding was tried to a jury in state court in June 1993 ("condemnation litigation"). After considering the evidence, the jury found that the condemnation damages to Parallax totaled only about $1.5 million. In August 1993, the state court entered judgment against Parallax in favor of Plaintiff for the sum of $1,397,593 ("Judgment"), representing the difference in the amount of Registry funds withdrawn by Parallax and the amount of the jury award plus post-judgment interest. Plaintiff asserts that during the pendency of the condemnation litigation, Parallax, acting through its managing director Salas–Porras Jr., transferred the Registry funds to foreign shareholders, related foreign shareholders, and an account with Union Bank. These transactions are described in greater detail below.

Parallax contested the Judgment by appealing to the Eighth District Court of Appeals and the Texas Supreme Court, both of which denied Parallax's appeals. Since Parallax exhausted its appellate rights in 1996, the state court judgment has become final. However, Parallax has not paid Plaintiff any amounts on the Judgment and has advised Plaintiff that it is insolvent, is judgment-proof, and has no funds to pay the Judgment.

In an effort to collect its Judgment, Plaintiff commenced post-Judgment discovery in state court against Parallax in 1996. Information and records obtained by Plaintiff in post-Judgment discovery revealed that, during the pendency of the condemnation litigation, some Defendants apparently had drained Parallax of millions of dollars in cash, including the Registry funds.[5] Through its Complaint, Plaintiff seeks to recover the transfers of Registry funds by Parallax to other Defendants.[6]

Post–Judgment discovery also revealed that Parallax maintained a bank account with Union Bank and a financial account with Dean Witter in El Paso. Discovery also established that, during the pendency of the condemnation litigation as well as after rendition of the state court Judgment, Parallax transferred over $7 million in non-Registry funds from MBank, Dean Witter, and Union Bank accounts to affiliated persons and entities, including Defendants.[7]

Furthermore, post-Judgment discovery showed that: 1) on the day after the state

5. Parallax supposedly objected to Plaintiff's request for post-Judgment discovery; however, the state court ordered Parallax to comply with the requests. Parallax, Plaintiff represents, produced limited information and incomplete bank records. Plaintiff then obtained additional bank records by way of subpoena.

6. The total amounts of Registry fund transfers alleged are as follows: to Salas–Porras Jr. in the amount of $549,101; to Salas–Porras Sr. in the amount of $260,175; to E. Salas–Porras in the amount of $379,998; to V. Salas–Porras in the amount of $397,998; to A. Salas–Porras in the

amount of $297,998; to Medrano in the amount of $50,000; to Rukubi in the amount of $490,-000; and to New World in the amount of $200,-000.

7. The total amounts of non-Registry fund transfers alleged are as follows: to Salas–Porras Jr. in the amount of $463,963; to Medrano in the amount of $107,813; to E. Salas–Porras in the amount of $25,161; to New World in the amount of $1,117,158; to Rukubi in the amount of $425,-902; and to Waks in the amount of $515,000.

court jury returned its verdict against Parallax, Parallax, through Salas–Porras Jr., closed its MBank account and transferred the balance of the account to E. Salas–Porras; 2) about one week after the jury verdict, Parallax, through Salas–Porras Jr., transferred all funds in its Union Bank account to a Texas bank account of New World; and 3) Parallax closed its Dean Witter account in El Paso and transferred a substantial amount of the funds to New World in El Paso. Plaintiff additionally seeks to recover these non-Registry fund transfers by Parallax to Defendants.

In the instant Motion, Defendants argue that this Court does not have jurisdiction over them under Fed.R.Civ.P. 12(b)(2). They assert that because their contacts with Texas are insufficient for purposes of establishing personal jurisdiction over them, the Court should dismiss Plaintiff's claims. Plaintiff counters, and the Court agrees, that the affidavits and evidence Plaintiff submitted in its Response, together with the Complaint, establish a prima facie case for the Court to exercise personal jurisdiction over Defendants.

### DISCUSSION

■ There is no dispute that Defendants are not residents of Texas. When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir.1985). In a diversity suit, a federal court has jurisdiction over a nonresident defendant to the same extent as a state court in that forum would have over the defendant. *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir.1994). However, the reach of a state court's jurisdiction is defined by the state's long-arm statute and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Bullion v. Gillespie*, 895 F.2d 213, 215 (5th Cir.1990).

The Texas long-arm statute allows the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX.CIV.PRAC. & REM.CODE ANN. § 17.042 (West 1997). The Texas Supreme Court interprets the "doing business" requirement broadly, permitting

the long-arm statute to reach as far as the United States Constitution allows. *Gundle Lining Const. v. Adams County Asphalt*, 85 F.3d 201, 204 (5th Cir.1996); *Bullion*, 895 F.2d at 215; *WNS*, 884 F.2d at 202. The Court therefore will analyze the exercise of personal jurisdiction over Defendants with respect to federal constitutional limits. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982) (limits on state power to subject a nonresident to suit is "ultimately a function of the individual liberty interest preserved by the Due Process Clause").

■ There are two requirements for a district court to exercise personal jurisdiction over a nonresident, in order to comport with due process principles. First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that forum state. *E.g., International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant, through his conduct and connection with the forum state, should reasonably anticipate being haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see also Gundle*, 85 F.3d at 204.

■ As to the "minimum contacts" prong of the inquiry, the Supreme Court has recognized a distinction between contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific personal jurisdiction over a nonresident defendant is proper only when the individual's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984). "General" personal jurisdiction, on the other hand, requires more continuous and systematic contacts with the forum state and is applicable when the cause of action does not arise from the defendant's contacts with the forum state. *Id.* at 414 n. 9, 104 S.Ct. at 1872 n. 9. By comparison, a

lesser standard of minimum contacts is required for specific personal jurisdiction than general personal jurisdiction. 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1067 at 296 (1987 & Supp.1997). Indeed, even a single act by a non-resident defendant directed to a forum state can be enough to confer specific personal jurisdiction if the act gives rise to the cause of action being asserted. *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir.1993).

■ The second requirement for the jurisdiction analysis is that the exercise of jurisdiction over the nonresident defendant must not offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (quoting *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158). When determining the fundamental fairness issue, a court will examine the following: 1) the defendant's burden; 2) the interests of the forum state; 3) the plaintiff's interest in convenient and effective relief; 4) the interest of the judicial system in efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* at 113, 107 S.Ct. at 1033; *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564.

■ Where, as here, a court relies on pleadings and affidavits alone in a jurisdictional challenge, the standard of proof is not a heavy one: the plaintiff need only establish a prima facie showing of jurisdiction. *See Bullion*, 895 F.2d at 217; *WNS*, 884 F.2d at 203. In fact, uncontroverted allegations in the plaintiff's complaint are taken as true and any conflicts between the facts are resolved in favor of the plaintiff. *Ruston Gas Turbines*, 9 F.3d at 418; *Bullion*, 895 F.2d at

217; *WNS*, 884 F.2d at 204.[8] Once a prima facie showing is made, however, it becomes the defendant's burden to convince the court that assertion of jurisdiction would be unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985); *see also* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067 at 301–02.

The Court first will address the question of specific and general personal jurisdiction, if applicable, as to each Defendant in turn below. The Court then will discuss the second requirement for jurisdiction, that is, "traditional notions of fair play and substantial justice," as to Defendants collectively.

### Carlos Salas–Porras Jr.

■ Salas–Porras Jr. resides in Cd. Juarez, Chihuahua, Mexico.[9] He is a managing director and shareholder of Parallax. Salas–Porras Jr. was a signatory on the Parallax MBank account and had signatory authority over the Dean Witter account of Parallax, all in El Paso. He personally maintained a safe deposit box with State National, also in El Paso.

The evidence provided by Plaintiff shows that Salas–Porras Jr. participated in numerous transfers of funds, amounting to hundreds of thousands of dollars, during the pendency and immediately after the conclusion of the condemnation litigation. Many of these transfers were made via checks personally endorsed by Salas–Porras Jr. and deposited by him into accounts he maintained with MBank and State National in El Paso.

Most, if not all, of the Registry fund transfers from Parallax to Defendants were made pursuant to the authorization and signature of Salas–Porras Jr. Over $200,000 in Registry funds were transferred to him personally and deposited into a bank account in El Paso. Similarly, most of the transfers of non-Regis-

---

**8.** As of the date of this Order, Defendants have not filed an answer and thus have not controverted any of the factual allegations made by the City in its Complaint. Defendants did, however, file Declarations in support of their Motions.

**9.** In his Declaration, Salas–Porras Jr. avers he does not and has never maintained a place of business or office in Texas; does not have a registered agent for service in Texas; does not have and never has had employees or agents in Texas; has never owned, leased, rented, or controlled real property in Texas; has never paid taxes in Texas; has never advertised in Texas; and, aside from one bank account, has no tangible personal or real property or any other assets in Texas.

try funds from Parallax El Paso accounts to Defendants during the pendency of the condemnation litigation were made on the authorization and signature of Salas–Porras Jr.

On June 18, 1993—the day after the Texas jury rendered a verdict in favor of Plaintiff and against Parallax—Salas–Porras Jr. closed the Parallax account at MBank, transferring the funds in the account to E. Salas–Porras. By letter dated June 23, 1993, Salas–Porras Jr. instructed Union Bank to close Parallax's account and to transfer all funds to the New World account at State National in El Paso. The face of the letter indicates it was sent to Union Bank by Salas–Porras Jr. from El Paso. The letter also reflects originating fax and telephone numbers with an El Paso area code, where Salas–Porras Jr. stated he could be contacted that afternoon.

Other correspondence from the records of Union Bank demonstrate that Salas–Porras Jr. maintained an office in El Paso. Also, records from State National/MBank and Dean Witter show that Salas–Porras Jr. maintained the following addresses in El Paso: 11220 Rojas; 8900 Viscount; and P.O. Box 370810. Even according to federal tax returns and IRS records, Salas–Porras Jr. maintained books and records of Parallax in El Paso, was a "general agent" in the United States for Parallax, and listed his address as a P.O. Box in El Paso.[10]

Given the weight of evidence produced by Plaintiff regarding Salas–Porras Jr.'s contacts with the forum state, the Court does not credit the assertions in his Declaration. The Court thus finds that Salas–Porras Jr. purposefully availed himself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas, as described above. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, the Court finds that Salas–Porras Jr.—who resided in a foreign border state while he took advantage of the banking and investment industries in a sister border state in the United States—should have reasonably anticipated being haled into court in Texas. The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over Salas–Porras Jr., pursuant to *International Shoe* and its progeny.[11]

### Carlos Salas–Porras Romero

■ Salas–Porras Sr. resides in Chihuahua, Chihuahua, Mexico.[12] The evidence provided by Plaintiff shows that Salas–Porras Sr. is a shareholder, representative, and managing director of Parallax. He had signatory authority on Parallax's accounts maintained at MBank and State National, as well as Parallax's Dean Witter account—all in El Paso. He opened the Dean Witter account in El Paso for Parallax and signed several contracts with Dean Witter relating to the account. He authorized transfers out of Parallax's MBank account, including several transfers to other Defendants, by checks he signed. According to State National records, Salas–Porras Sr. had signatory authority over and access to a safe deposit box in El Paso maintained by Parallax. MBank and State National records list Salas–Porras Sr.'s addresses as 8900 Viscount; 11220 Rojas Drive; and 10978 Montwood Drive—also all in El Paso.[13]

---

**10.** Sworn affidavits filed in state court indicate that Salas–Porras Jr.'s address is 11220 Rojas in El Paso. However, Salas–Porras Jr. states in his Declaration filed with this Court that he has never maintained an office or place of business in Texas. For purposes of this Motion the Court credits the representations made by Plaintiff in this regard. *See, e.g., Ruston Gas Turbines*, 9 F.3d at 418.

**11.** The Court additionally finds that Salas–Porras Jr.'s contacts with the forum state are sufficiently systematic and continuous for the exercise of general jurisdiction over him. *See Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9.

**12.** In his Declaration, Salas–Porras Sr. states he does not maintained an office in Texas; has never had a registered agent for service in Texas; does not have and never has had employees or agents in Texas; does not own, lease, rent, or control real property in Texas; has never paid taxes in Texas; has never advertised in Texas; and has no tangible personal or real property or any other assets in Texas.

**13.** The Court notes that in his Declaration filed in support of dismissal, Salas–Porras Sr. states that he does not maintain an office or own, lease, or control property in Texas. He does not state, however, that he has "never" maintained an

Plaintiff provided convincing evidence showing that Salas–Porras Sr. participated in the transfer and deposit of funds into numerous accounts in El Paso and abroad. For example, over $600,000 in Registry funds were transferred from MBank to or for the benefit of Salas–Porras Sr. Some payments made to Salas–Porras Sr. from the MBank account were deposited into the Union Bank account of Parallax. Also, Salas–Porras Sr. authorized the transfer of over $260,000 in Registry funds from Parallax's Union Bank account in New York to a Union Bank account in Switzerland. In fact, Union Bank records show that Salas–Porras Sr. corresponded with Union Bank (in New York) using the return address, 8900 Viscount, El Paso. Further, Rukubi, Salas–Porras Sr.'s company, received over $490,000 in Registry funds from Parallax. Parallax transferred the Registry funds from its MBank account to the MBank account of Rukubi for the purpose of paying Salas–Porras Sr. personally. Similarly, Parallax made payments from its Union Bank account to Salas–Porras Sr. personally through the New World account at State National. To be sure, all the funds involved in these transfers are the subject of this cause.

As with Salas–Porras Jr., the Court finds that Salas–Porras Sr. purposefully availed himself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, Salas–Porras Sr.—who resided in a foreign border state while he took advantage of the banking and investment industries in a sister border state in the United States—should have reasonably anticipated being haled into court in Texas. The Court concludes that Plaintiff has established the first require-

ment for the Court to exercise specific personal jurisdiction over Salas–Porras Sr. *See, e.g., Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183.

### Virginia Salas–Porras de Cano, Aurora Salas–Porras Romero, and Elvira Salas Porras de Lugo

▇▇ Defendants V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras reside in Chihuahua, Chihuahua, Mexico.[14] They are shareholders and representatives of Parallax. They invested in Parallax to purchase the Americas property, apparently because of the strong real estate market in Texas. They are related to Salas–Porras Jr. and Salas–Porras Sr. According to evidence provided by Plaintiffs, Parallax transferred hundreds of thousands of dollars to V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras during the pendency of the condemnation litigation. Parallax paid Registry funds to them by checks drawn on Parallax's MBank account.[15]

As to V. Salas–Porras, bank records submitted by Plaintiff reveal that Parallax made four transfers of Registry funds totaling almost $400,000 to her on separate checks. She endorsed the checks and deposited them into her bank accounts at State National and MBank in El Paso.

Parallax made three similar transfers of Registry funds to A. Salas–Porras totaling just under $300,000 of Registry funds on separate checks. She endorsed each check and deposited them into her account at MBank in El Paso.

Parallax also made four transfers of Registry funds to E. Salas–Porras totaling almost $400,000 by four separate checks. E. Salas–Porras endorsed and deposited the checks into her bank account with MBank in El Paso.

---

office, residence, or property in Texas, as some of the other Defendants' Declarations so state.

**14.** In their Declarations, V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras assert they do not and have never maintained a place of business or office in Texas; have never had a registered agent for service in Texas; do not have and never have had employees or agents in Texas; do not own, lease, rent, or control real property in

Texas; have never paid taxes in Texas; have never advertised in Texas; and have no tangible personal or real property or any other assets in Texas.

**15.** Although these Defendants indicate in their Declarations that they currently do not have bank accounts in Texas, they do not aver that they never have had bank accounts in Texas.

Through this cause, the City is seeking to recover these transfers of Registry funds. The pertinent facts relating to the transfers all occurred in Texas, namely, the deposit of Registry funds from a Texas state court into Texas bank accounts of Parallax, the transfer of these funds by checks drawn on the Texas bank accounts, and the endorsing and depositing of the checks by Defendants V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras into their own accounts in El Paso.

The Court finds that V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras purposefully availed themselves to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, V. Salas–Porras, A. Salas–Porras, and E. Salas–Porras—who resided in a foreign border state while they took advantage of the banking and investment industries in a sister border state in the United States—should have reasonably anticipated being haled into court in Texas. The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over them, pursuant to *International Shoe* and its offspring.[16]

### Patricia Medrano Hernandez

■ Defendant Medrano resides in Cd. Juarez, Chihuahua, Mexico.[17] She is the wife of Salas–Porras Sr. Bank records show that Medrano received a transfer of $50,000 in Registry funds from the MBank El Paso account of Parallax. The check was deposited into her MBank account in El Paso. The Court is aware of no evidence of consideration in exchange for the transfer of the $50,000.

Medrano also received an additional transfer of funds out of the Parallax MBank El Paso account in the amount of about $107,000 during the pendency of the condemnation litigation with the City. The check was endorsed by Medrano and deposited into her MBank account in El Paso.[18]

The Court finds that Medrano purposefully availed herself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, Medrano—who resided in a foreign border state while she took advantage of the banking and investment industries in a sister border state in the United States—should have reasonably anticipated being haled into court in Texas. The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over Medrano, under *International Shoe* and subsequent cases.

### Esther Salas–Porras

■ Defendant E. Salas–Porras resides in Chihuahua, Chihuahua, Mexico.[19] She is

**16.** Defendants rely on *Ramirez v. Lagunes,* 794 S.W.2d 501 (Tex.App.—Corpus Christi 1990, no writ) and *Potkovick v. Regional Ventures, Inc.,* 904 S.W.2d 846 (Tex.App.—Eastland 1995, no writ) for the proposition that mere ownership of a bank account or real property in the State of Texas will not submit a non-resident defendant to personal jurisdiction. However, *Ramirez* dealt with a general jurisdiction analysis because the cause of action was not related to the account, unlike here where the Court is weighing whether it has specific personal jurisdiction over these Defendants where the accounts are related to the cause of action. *See* 794 S.W.2d at 504. In *Potkovick,* the court found specific jurisdiction existed over a non-resident defendant where the cause of action related to the defendant's one asset in the forum state. *See* 904 S.W.2d at 848, 850.

**17.** In her Declaration, Medrano avers she does not have and never has maintained a place of

business or office in Texas; has never had a registered agent for service in Texas; does not have and never has had employees or agents in Texas; does not own, lease rent or control real property in Texas; has never paid taxes in Texas; has never advertised in Texas; and, except for a single bank account, has no tangible personal or real property or any other assets in Texas.

**18.** The back of this check, like others submitted as evidence in the instant Motion, shows an account number beginning with "748," indicating a deposit into an MBank or State National account in El Paso.

**19.** In her Declaration, E. Salas–Porras indicates she does not have and never has maintained a place of business, office, or telephone number in Texas; has never had a registered agent for service in Texas; does not have and never has had employees or agents in Texas; has never paid

related to Salas–Porras Jr. E. Salas–Porras received only one allegedly fraudulent transfer, which is the subject of Plaintiff's Complaint. The timing of the transfer, however, is highly suspect because it occurred on June 18, 1993—the day after a jury returned a verdict in favor of Plaintiff.[20]

The June 18 transfer occurred at the request of Salas–Porras Jr. He asked that the Parallax State National account be closed and that all remaining funds in the account be transferred to E. Salas–Porras. On the same date, a cashier's check was drawn on the State National account payable to E. Salas–Porras, and was deposited into a State National account in El Paso. The June 18 transfer resulted in the closing of the Parallax account with State National.

The Court finds that E. Salas–Porras purposefully availed herself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, E. Salas–Porras—who resided in a foreign border state while she took advantage of the banking and investment industries in a sister border state in the United States—should have reasonably anticipated being haled into court in Texas. *See Ruston Gas Turbines*, 9 F.3d at 419 (even a single act by a non-resident defendant directed to a forum state can be enough to confer "specific jurisdiction" if the act gives rise to the cause of action being asserted). The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over E. Salas–Porras, pursuant to *International Shoe* and its progeny.

### Rukubi, S.A. de C.V.

 Defendant Rukubi is a company of Salas–Porras Sr. and is located in Cd. Juarez, Chihuahua, Mexico.[21] By transfer dated September 16, 1991, Rukubi received a transfer of Registry funds in the amount of $490,000 from the MBank El Paso account of Parallax. This transfer was made by Parallax to Rukubi to pay Salas–Porras Sr. personally. Moreover, Rukubi received at least eight other transfers from the State National account of Parallax totaling over $425,000 during the pendency of the litigation with Plaintiff. Many of these transfers were by checks deposited into a Rukubi account with State National in El Paso. State National records show that Rukubi maintained an account there and it appears, from checks drawn on that account, that Salas–Porras Jr. was a signatory on the account. These records also show that Rukubi used the same business office as Parallax and New World in El Paso at 8900 Viscount.

The Court finds that Rukubi purposefully availed itself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, Rukubi should have reasonably anticipated being haled into court in Texas. The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over Rukubi. *See, e.g., Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183.

### New World Trading Company Ltd.

 New World is incorporated under the laws of the British West Indies. Its principal place of business is in Mexico.[22]

---

taxes in Texas; has never advertised in Texas; and, except for a single bank account, has no tangible personal or real property or any other assets in Texas.

20. A judgment of about $1.4 million subsequently was rendered against Parallax in favor of Plaintiff.

21. In its Declaration, Rukubi avers that it does not have and never has maintained a place of business or office in Texas; has never had a registered agent for service in Texas; does not

have and never has had employees in Texas; has never owned, leased, rented, or controlled real property in Texas; has never paid taxes in Texas; has never advertised in Texas; and, except for a single bank account, has no tangible personal or real property or any other assets in Texas.

22. The record does not show precisely where in Mexico New World is located. In its Declaration, New World asserts it does not have and never has maintained a place of business or office in Texas; has never had a registered agent for service in Texas; does not have and never has

Salas–Porras Jr. and Salas–Porras Sr. are directors of New World. New World maintained an account at State National in El Paso. There were numerous transfers from the MBank account of Parallax in El Paso to accounts of New World at State National in El Paso, which are the subject of this cause. For instance, Parallax transferred $200,000 in Registry funds to New World to pay Salas–Porras Sr. personally. Parallax also made payments to Salas–Porras Sr. through New World accounts at State National in El Paso. Bank records from MBank and State National also show that over $1.1 million in additional funds were transferred by Parallax to New World during the pendency of the condemnation litigation with Plaintiff. Several of these transfers were made from the Parallax MBank and State National El Paso accounts to New World accounts in El Paso.

Furthermore, within one week after the jury returned its verdict in favor of the City in state court, the Parallax account in Union Bank was closed and all remaining funds were transferred to a New World account at State National in El Paso. The instruction to close the Parallax account and to transfer the funds to New World was made from El Paso by a letter signed by Salas–Porras Jr. and dated June 23, 1993.

What is more, in a move characterized as surreptitious by Plaintiff, the name on the Dean Witter account of Parallax was changed to New World. The changing of the name occurred in El Paso. According to Dean Witter records, the addresses of New World are in El Paso. These addresses—8900 Viscount and 11220 Rojas—are the same addresses used by Parallax and other Defendants. Records also show that there were transfers of funds from the Parallax Dean Witter account to a New World account in El Paso during the pendency of the condemnation

litigation with Plaintiff. These transactions and transfers concerning the Dean Witter accounts of Parallax and New World occurred in El Paso and are the subject of Plaintiff's Complaint.

Through the numerous transactions described above, the Court finds that New World purposefully availed itself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, New World should have reasonably anticipated being haled into court in Texas. Pursuant to *International Shoe* and its progeny, the Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over New World.

### Waks Development Corporation

■ Waks is a Panamanian corporation with its principal place of business in Mexico.[23] It maintained a bank account with MBank in El Paso, with Salas–Porras as signatory of the account. Waks has received numerous transfers from Parallax during the pendency of the litigation with Plaintiff, totaling about $515,000. According to MBank records, these transfers were made by checks drawn on Parallax's MBank account, endorsed by Waks, and deposited into a Waks account at MBank in El Paso. These transfers also are the subject of Plaintiff's Complaint.

The Court finds that Waks purposefully availed itself to the benefits and protections of the forum state by establishing sufficient minimum contacts with Texas. The Court further finds that these minimum contacts arise from or are directly related to the cause of action. Given these minimum contacts, Waks should have reasonably anticipat-

had employees in Texas; does not lease or rent real property in Texas; maintains a single account at Dean Witter in El Paso; has never advertised in Texas; and, except for the Dean Witter account, has no tangible personal or real property or any other assets in Texas.

**23.** The record does not show precisely where in Mexico Waks is located. In its Declaration, Waks indicates it does not have and never has maintained a place of business or office in Texas;

has never had a registered agent for service in Texas; does not have and never has had employees in Texas; does not lease or rent real property in Texas, but owns a single piece of real property in El Paso; maintains a single account at Dean Witter in El Paso; has never advertised in Texas; and, except for the Dean Witter account and a bank account, has no tangible personal or real property or any other assets in Texas.

ed being haled into court in Texas. The Court concludes that Plaintiff has established the first requirement for the Court to exercise specific personal jurisdiction over Waks, pursuant to *International Shoe* and its progeny.

### Traditional Notions of Fair Play and Substantial Justice Analysis

■ Having found all Defendants have had sufficient minimum contacts with the forum state to meet the first requirement of the specific personal jurisdiction analysis, the Court now addresses the second element of the inquiry. Under the second element, the Court must determine whether exercising personal jurisdiction over Defendants offends traditional notions of fair play and substantial justice. *See, e.g., Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033. This analysis involves examining 1) the defendant's burden; 2) the forum state's interest; 3) the plaintiff's interest in convenient and effective relief; 4) the judicial system's interest in efficient resolution of controversies; and 5) the shared interest of the states in furthering fundamental substantive social policies. *Id.; World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. at 564; *Gundle Lining*, 85 F.3d at 207. As explained below, the Court finds Plaintiff also has established the second requirement for this Court to exercise specific personal jurisdiction over Defendants.

Here, the Defendants' burden in defending themselves in this forum is not great. All are from the neighboring state of Chihuahua, Mexico; most are from the city of Chihuahua or Cd. Juarez. Unlike the burden in *Asahi*, where the nonresident party had to travel to California from Japan for a claim for indemnification, Defendants are only a short drive away from El Paso, wherein the minimum contacts occurred and where this Court is located. *See Asahi*, 480 U.S. at 114–15. In light of the realities of today's global economy—with business routinely conducted across international boundaries, especially along the United States and Mexico border, and the efficiency of modern transportation and communications—it is reasonable for the Court to exercise jurisdiction over Defendants who clearly have taken advantage of the conveniences found in a neighboring border city. *See Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. at 2183 ("because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957))); *World–Wide Volkswagen Corp.*, 444 U.S. at 292–94, 100 S.Ct. at 565 (the "guarantor against inconvenient litigation" is eroding because of the "fundamental transformation in the American economy").

The State of Texas certainly has a great interest in the outcome of this litigation, as does Plaintiff, the City of El Paso. The subject matter of this cause concerns funds that could go to the City's coffers thereby benefitting its citizens, who also are residents of Texas. Up to this point in the litigation, all prior proceedings have been conducted in Texas state courts, each rendering decisions in favor of Plaintiff. Plaintiff undoubtedly has expended much time and money pursuing their claim in several judicial fora both at the state and federal level. Plaintiff and the state of Texas have a clear vested interest in seeing this matter brought to a conclusion. *See Burger King Corp.*, 471 U.S. at 473, 105 S.Ct. at 2182–83 ("[a] State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

The interest of the judicial system in efficient resolution of controversies also is great. As noted above, this cause comes by way of several state court proceedings, including appeals to the highest court in Texas. This Court now has the opportunity to bring closure to the matter on the merits if and when the opportunity arises, thereby bringing an efficient resolution to a matter that already has been disposed of on its merits in state court.

Respecting that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *United States v. First National City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting), the Court finds that the United States and Mexico surely have a shared interest in seeing disputes of this nature re-

solved as expeditiously as possible. This finding is based largely on the fact that it would be reasonable for the Court to exert jurisdiction over Defendants, particularly because they do not face serious burdens in defending themselves in this forum relative to the great interest of Plaintiff and the forum state in this cause. *See Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034 (where the interest of other nations are considered, the inquiry focuses on the reasonableness of exercising jurisdiction over the nonresident).

Finally, even if a court finds that a plaintiff has established a prima facie case for exercising personal jurisdiction over a nonresident defendant, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. at 2185. As discussed above, Plaintiff has shown a prima facie case for this Court to exercise specific personal jurisdiction over Defendants. Defendants, however, have not met their burden of showing such jurisdiction would be unreasonable.

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction each filed on November 24, 1997, in this cause are **DENIED.**