**BERNICE CLAIRE ROW TRUST, et al., Appellants,**

v.

**THROCKMORTON LAND & CATTLE CO., INC., Appellee.**

No. 11–98–00116–CV.

Court of Appeals of Texas, Eastland.

Oct. 1, 1998.

Frank W. Conard, II, Sweetwater, Russell C. Beard, Abilene, for appellants.

Jess N. Turner, III, Turner & Allen, Graham, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

DICKENSON, Justice.

This is an accelerated appeal under TEX. R.APP.P. 28.1. Two nonresident defendants appealed the trial court's interlocutory order which overruled their special appearances under TEX.R.CIV.P. 120a. After a nonjury hearing, the trial court ruled that appellants were amenable to process by the courts of this State.[1] We affirm.

### Background Facts

Plaintiff, Throckmorton Land & Cattle Co., Inc., originally filed suit against John E. Row in connection with a dispute over a contract dated October 14, 1994, that Row signed as "Caretaker" for 300 yearling heifer cattle which were owned by plaintiff and which were to be pastured on a ranch that Row managed in Oklahoma. During Row's deposition, plaintiff learned that Row was not the owner of the ranch. Plaintiff learned that the ranch was owned in equal shares by two Oklahoma trust estates: the Bernice Claire Row Revocable Trust[2] and the Revocable Living Trust of James B. Smith[3] and Roberta G. Smith.

Plaintiff also learned that the two trusts operated the ranch as a partnership and that all of the income from their ranch operations was deposited into a checking account named "Smith Trust and Row Trust d/b/a R & S Land and Cattle." John E. Row managed the ranch, and he made the deposits and wrote the checks on that bank account. The income and expenses of the ranch were reported by the two trusts on their income tax returns. Each trust reported one-half of the income and one-half of the expenses. There was no written agreement between the trusts and the ranch manager at the time the ranch

---

1. See TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 1997). The appeal of this interlocutory order is authorized by TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp.1998).

2. Bernice Claire Row was the mother of John E. Row. She died after the 1994 contract was executed.

3. James B. Smith was the former partner of John E. Row's deceased father.

manager executed the agreement with plaintiff.

At the hearing on the trusts' special appearances, all of the defendants took the position that the ranch manager was the "tenant" of the ranch and that he was not the "agent" of the trusts. The trial court resolved this disputed fact issue by finding that the ranch manager was the agent of the two trusts and that he had the actual authority to bind the trusts on the written agreement with plaintiff. Plaintiff is suing Row and the trusts, jointly and severally, for $49,000.

*Findings of Fact and Conclusions of Law*

After the nonjury hearing on the nonresident trusts' special appearances, the trial court ruled that it had jurisdiction. The trial court later filed findings of fact and conclusions of law pursuant to TEX.R.CIV.P. 296 which read in pertinent part as shown:

1. Throckmorton Land & Cattle Co., Inc. (TLC) is a Texas corporation.

3. John Row and TLC entered into a Pasture and Care Agreement, dated October 14, 1994.

15. This suit was filed by TLC for breach of the Pasture and Care Agreement.

16. The Pasture and Care Agreement provided that Texas law was to govern the rights and duties of the parties, the construction of the contract, and the resolution of any dispute.

17. The Pasture and Care Agreement provided for venue of any dispute arising out of the contract to be in Throckmorton County, Texas.

18. The Bernice Claire Row Trust ... and the Revocable Living Trust of James B. Smith and Roberta G. Smith ... (the Trusts) each owned an undivided one-half interest in the ranch on which TLC's cattle were pastured by John Row.

19. The Trusts operated the ranch as a partnership, under the name of R & S Cattle Co.

25. John Row was employed by R & S Cattle Co. to manage the ranch to generate income for the Trusts to pay the note to the Bank of Southern Oklahoma which

they had signed for the purchase of the ranch.

39. The Trustees of each trust reported one-half of all income and expenses of the ranch operations on their annual income tax returns.

40. The Trusts equally shared profits and losses from the operation of R & S Cattle Co.

48. John Row was acting as the agent for R & S Cattle Co. in managing the ranch operations.

49. John Row was acting as agent for R & S Cattle Co. in entering into the Pasture and Care Agreement with TLC.

51. The Trusts, through their agent, John Row, entered into a contract with a Texas resident that was performable in part in the state of Texas.

53. The exercise of jurisdiction over the Trusts under the facts of this case do not offend the traditional notions of fair play and substantial justice.

*Issues Presented for Review*

Appellants, the nonresident trust estates, present the following issues for review pursuant to TEX.R.APP.P 38.1(e):

(1) The Trial Court erred in overruling Appellants' Special Appearance because there was no evidence, or in the alternative, the evidence was insufficient to establish that Appellants had contacts with Texas sufficient to sustain the jurisdiction of the Texas Court.

(2) The Trial Court erred in overruling Appellants' Special Appearance under the theory that John Row was acting as the Appellants' agent in executing the pasture agreement because there was no evidence, or in the alternative, the evidence was insufficient to establish that John Row had either actual or apparent authority to act for Appellants in executing the pasture agreement.

(3) The Trial Court erred in overruling Appellants' Special Appearance because there was no evidence, or in the alternative, the evidence was insufficient to establish that Appellants ratified the actions of

John Row in signing the pasture care agreement.

### This Court's Ruling

The evidence is both "legally" and "factually" sufficient under the tests stated in Ray v. Farmers' State Bank of Hart, 576 S.W.2d 607, 609 (Tex.1979), and In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), to support the trial court's findings that: (1) "Appellants had contacts with Texas sufficient to sustain the jurisdiction of the Texas Court" and (2) "John Row had ... actual ... authority to act for Appellants in executing the pasture agreement." The first two "issues for review" are overruled, and the third issue becomes moot.[4]

The evidence supports the trial court's findings that the two Oklahoma trusts operated their ranch as a partnership and that they divided equally the income and expenses from the ranch. The evidence also supports the trial court's finding that the partnership had an unwritten agreement with John E. Row which permitted him to manage the ranch. That agreement did not limit his power to manage the ranch, and there is evidence which is legally and factually sufficient to support the trial court's finding that the ranch manager had the actual, implied power to make the agreement which led to the lawsuit which is now before us. Consequently, the nonresident appellants are "amenable to process issued by courts of this State" because their agent entered into a written agreement which provided for "venue of any dispute arising out of the contract to be in Throckmorton County, Texas." See and compare Potkovick v. Regional Ventures, Inc., 904 S.W.2d 846 (Tex.App.—Eastland 1995, no pet'n); Motiograph, Inc. v. Check-Out Systems, Inc., 573 S.W.2d 606 (Tex.Civ. App.—Eastland 1978, writ ref'd).

Appellants cite Schlobohm v. Schapiro, 784 S.W.2d 355, 358 (Tex.1990), in connection with their "first issue for review." That case dealt with a claim that the nonresident was subject to the jurisdiction in Texas "based on continuing and systematic activity." The case before us concerns a contract that was executed by the nonresidents' ranch manager which called for venue in Throckmorton County, Texas. There is evidence to support the trial court's finding that the ranch manager had the authority to make that contract and that it is binding on the undisclosed principals. Appellants cite Gittings, Neiman–Marcus, Inc. v. Estes, 440 S.W.2d 90, 93 (Tex.Civ.App.—Eastland 1969, no writ), in connection with their "second issue for review." That case dealt with a written power of attorney which is "strictly construed to limit the authority of the attorney in fact." That case also dealt with a contract which was "plainly adverse to the interest of his principal." In the case before us, there was no written power of attorney, and the contract which was made by the ranch manager did not appear to be adverse to the interests of the owners of the ranch at the time it was made.

The trial court had the power to resolve the disputed fact issue as to whether the ranch manager had the actual authority to make the contract with plaintiff, and there is evidence to support the trial court's findings. Consequently, the trial court's order of May 18, 1998, is affirmed.

4. See TEX.R.APP.P 47.1 which instructs the appellate courts to address only the issues which are "necessary to final disposition of the appeal."