**Opinion issued April 7, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

———————————

## NO. 01-24-00611-CV

———————————

**TRANSPORTES JUAN CHAVEZ, S.A. DE C.V., Appellant**

**v.**

**MARIBEL DEHARO, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HIPOLITO DEHARO, YVETTE DEL RIO, AND PEDRO DEHARO, Appellees**

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-73523**

## MEMORANDUM OPINION

Appellant Transportes Juan Chavez, S.A. de C.V. (Transportes Mexico), a Mexican corporation with its principal place of business in the Mexican state of San Luis Potosí, takes this interlocutory appeal from the trial court's denial of its

special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7) (authorizing interlocutory appeal of order denying special appearance). Transportes Mexico contends that the trial court lacks personal jurisdiction over it and thus erred in denying its special appearance.

Because the evidence in the record, viewed in the light most favorable to the trial court's ruling, shows that Transportes Mexico was not the alter ego of a Texas affiliate and restricted its operations mostly or entirely to Mexico, we conclude that the trial court does not have general jurisdiction over it. We decide further that the trial court does not have specific jurisdiction over Transportes Mexico. The evidence in the record, considered in the light most favorable to the trial court's ruling, does not show a substantial connection between the operative facts and Transportes Mexico's Texas contacts that were its own choice—i.e., that, on the basis of its chosen contacts, Transportes Mexico could reasonably anticipate being called into a Texas court with respect to the plaintiffs' claims. Finally, we conclude that the plaintiffs' assertion that Transportes Mexico conspired with Texas residents is insufficient to affirm the trial court's exercise of personal jurisdiction. We thus reverse the trial court's order denying Transportes Mexico's special appearance and render judgment dismissing for lack of jurisdiction the claims against Transportes Mexico brought by appellees Maribel Deharo (Maribel),

individually and as representative of the Estate of Hipolito Deharo, Yvette Del Rio, and Pedro Deharo (collectively, the Deharos).

## Background

Maribel resides in Liberty County, Texas. Hipolito Deharo (Hipolito), deceased, is her late husband. Maribel and Hipolito were injured in a bus accident that occurred in San Luis Potosí, Mexico, on December 21, 2019. Maribel alleges that Hipolito was alive for the two hours that it took for emergency medical personnel to arrive at the scene of the accident but succumbed to his injuries some hours later.

### A. Original Petition

In connection with the 2019 bus accident, on November 9, 2021, Maribel, individually and as the representative of Hipolito's estate, brought claims in Harris County, Texas against defendants Transportes Chavez, Inc. (Transportes Texas), Juan Chavez, Maria Rodriguez, and 100 John Does. Transportes Texas is a Texas corporation with its alleged principal place of business in Texas. Maribel alleged that Chavez and Rodriguez own Transportes Texas, and that Transportes Texas owns and operates a bus terminal in Harris County, Texas.

Maribel pleaded that she and Hipolito purchased tickets for the bus from Transportes Texas in Harris County. They boarded the bus at Transportes Texas's

Harris County terminal. The bus accident in San Luis Potosí occurred when the bus began swerving and ultimately rolled over.

## B.     Amended Petition

On December 13, 2021, Maribel amended her pleading. In the amended petition, Maribel and Hipolito's children were added as plaintiffs and Transportes Mexico and Chavez International, LLC (Chavez LLC) were added as defendants. The plaintiffs pleaded that Mexican authorities had identified Transportes Mexico as the owner of the bus involved in the accident and that Chavez LLC was the lessor of the bus.

The plaintiffs alleged that Transportes Mexico and Chavez LLC are commercial motor vehicle operators or owners pursuant to Federal Motor Carrier Safety Administration (FMCSA) regulations and common carriers as defined by law. They claimed that Transportes Mexico and Chavez LLC committed negligent acts that were proximate causes of the bus accident, including: hiring, retaining, and failing to adequately train or supervise the bus's driver, and failing to follow and enforce safety rules and regulations including the FMCSA regulations. With regard to Transportes Mexico specifically, the plaintiffs claimed that it:

- failed to comply with applicable FMCSA regulations;

- failed to disclose it was operating in violation of applicable FMCSA regulations;

- failed to adequately supervise or train the bus driver;

- hired and retained, and entrusted the bus, to a driver Transportes Mexico knew or should have known was reckless, incompetent, or both;

- entrusted the bus to a driver Transportes Mexico knew or should have known was fatigued;

- failed to follow federal regulations regarding driver qualification records;

- failed to inspect and monitor the driver's on-duty records;

- failed to properly inspect, maintain, and repair the bus;

- failed to enforce its own safety rules, policies, and procedures;

- failed to manage and supervise its operations in compliance with applicable laws and regulations; and

- conspired with other defendants to operate a commercial motor vehicle passenger bus line in violation of applicable FMCSA regulations.

The plaintiffs claimed that Transportes Mexico and Chavez LLC are the alter egos of Chavez and, in the alternative, that Chavez and Rodriguez created, owned, and controlled Transportes Mexico and Chavez LLC for unlawful purposes.

## C. Special Appearance

Appellant Transportes Mexico filed a special appearance on January 3, 2024. Transportes Mexico alleged that it is a Mexican company that does business exclusively in Mexico. Transportes Mexico stated that it operates solely through its drivers in Mexico and does not operate in Texas or elsewhere in the United States. Transportes Mexico noted that Transportes Texas and Chavez LLC are both United

States corporations that do business in Texas and that both had answered and appeared in the litigation.

Transportes Mexico alleged that, while it has a contractual relationship with Transportes Texas and Chavez LLC, those entities "are operated as distinct entities with each [of the] companies' respective operations restricted to their given country of incorporation." Transportes Mexico claimed further that it "does not do business in Texas in any meaningful way connected to the accident at issue."

### 1.     Corporate entities and Juan Chavez

According to Transportes Mexico, Transportes Mexico is a corporation organized under the laws of Mexico that owns and operates a passenger bus service and several passenger buses. Each of Transportes Mexico, Transportes Texas, and Chavez LLC "is fundamentally a bus company, and each employs [its] own respective drivers, maintains [its] own insurance, and conducts business exclusively in [its] own respective countr[y]." Chavez is a shareholder of Transportes Mexico and was also a shareholder of Transportes Texas at the time of the bus accident. Chavez owned Chavez LLC at the time of the subject accident, but Chavez LLC was dissolved in December 2022.

### 2.     Transportes Mexico, Transportes Texas, and Chavez LLC operations

According to Transportes Mexico, it operates solely on the Mexican side of the Texas–Mexico border. Transportes Mexico drivers are not licensed to operate

6

in Texas. Transportes Mexico "is solely responsible for the use of the subject buses and its employees while operating those within the Mexican interior."

Transportes Mexico alleged that Transportes Texas or Chavez LLC is "solely responsible for the operation of buses, transportation of passengers, and their employed drivers when operating in Texas." Transportes Texas and Chavez LLC's drivers do not travel into or operate in Mexico. "For buses used in the United States, either [Chavez LLC or Transportes Texas] was responsible for inspecting any that it operated regardless of whether it was rented from [Transportes Mexico] or owned by one of those Texas-based companies."

### 3. Transportes Mexico, Transportes Texas, and Chavez LLC operations at Texas–Mexico border

According to Transportes Mexico, Transportes Mexico "transports passengers exclusively within the Mexican interior to the Texas–Mexico border where the Mexican driver hands off the bus to an American driver employed by [Transportes Texas] and the American driver the[n] drives the passengers into the United States." Transportes Mexico drivers "de-board buses owned by or operated by [Transportes Mexico] on the Mexican side of the Texas/Mexico [border] and do not enter the State of Texas or United States." After Transportes Mexico drivers de-board on the Mexican side of the Texas–Mexico border, "drivers employed by either [Transportes Texas or Chavez LLC] board the bus and drive it and the passengers into the State of Texas."

7

Transportes Mexico stated that: "At no time do [Transportes Mexico] drivers travel into Texas or the United States for the purposes of carriage of individuals or any other business purpose." At the Texas–Mexico border, "unless required by Customs or immigration to exit temporarily[,] passengers remain on the bus[,] only the driver is exchanged in Mexico and the bus may travel into the [United States] under the exclusive operative control by [Transportes Texas and Chavez LLC]." Something similar "occurs in reverse upon the return trip to Mexico at which time the interchange occurs, and [Transportes Mexico] regains custody, control and operation of the bus in the Mexican interior, utilizing only its employed drivers." Alternatively, "passengers may deboard the bus owed by [Transportes Mexico] and get on board a bus owned and operated by [Transportes Texas or Chavez LLC] for entry into the United States." Transportes Mexico drivers "retrieve buses used by [Transportes Texas or Chavez LLC] at the Texas/Mexico [border] for use of the buses in Mexico by [Transportes Mexico] drivers." Transportes Mexico claimed that, under Transportes Mexico's "agreement with [Transportes Texas and Chavez LLC], [Transportes Mexico]'s duties and responsibilities terminate at the Texas/Mexico border upon which time [Transportes Texas or Chavez LLC] would take control of the subject bus per that agreement."[1]

---

[1] Transportes Mexico references a single "interline" agreement with Transportes Texas and Chavez LLC, whereas the plaintiffs allege that multiple interline and lease agreements existed between Transportes Mexico and Transportes Texas and

Transportes Mexico alleged that, "[w]hen operations of a bus changes from one company to another, it is denoted by a sign or sticker on the bus." A bus operated by Transportes Mexico in Mexico will have attached to it a sign or sticker "indicating such." A bus operated by Transportes Texas or Chavez LLC in the United States will have attached to it a sign or sticker "indicating such."

### 4. Insurance

According to Transportes Mexico, buses that Transportes Texas or Chavez LLC operates in the United States are insured by those companies in the United States, and buses that Transportes Mexico operates are insured for travel in Mexico by Mexican insurers. "Buses operated in the United States by [Transportes Texas or Chavez LLC] are registered in the United States by those companies and insured for travel in the United States by United States-based insurers." "No United-States insurer insures a bus for its use in Mexico, and no Mexico-based insurer insures a bus for its use in the United States."

### 5. Revenue

According to Transportes Mexico, "[r]evenue from the passenger tickets sold by [Transportes Texas and Chavez LLC] is kept and maintained exclusively by [Transportes Texas and Chavez LLC]; it is not shared with [Transportes Mexico]." Similarly, "revenues from passenger tickets sold by [Transportes

---

Chavez LLC. The record on appeal does not include any of the alleged agreements.

9

Mexico] are kept and maintained exclusively by that Mexican corporation and not shared with" Transportes Texas and Chavez LLC.

**6.    December 21, 2019 accident**

According to Transportes Mexico, at the time of the bus accident at issue, Maribel and Hipolito "were traveling in the Mexican interior on a bus owned and operated by [Transportes Mexico]" and driven by a Transportes Mexico driver. Transportes Mexico "received the bus and its passengers from [Transportes Texas] on the Mexican side of the border, and no [Transportes Mexico] operator . . . entered Texas." Thus, Transportes Mexico claimed, "neither [Transportes Texas nor Chavez LLC] had custody or control over the subject bus at the time of the accident at issue."

Transportes Mexico stated that, at the time of the accident, the bus at issue was registered in Mexico and "marked as being operated by [Transportes Mexico]." Chavez LLC had "rented the bus involved in the [accident] from [Transportes Mexico] for use by [Chavez LLC] in the United States." Transportes Texas had "rented the bus involved in the [accident] from [Transportes Mexico] for use by [Transportes Texas] in the United States by [Transportes Texas] drivers."

### 7. Other potential contacts with Texas

According to Transportes Mexico, Transportes Mexico does not have an office, registered agent, telephone directory listing, commercial listing, or bank account in Texas. Nor does it have any operations, facilities, or "yard" in Texas. Transportes Mexico is not registered with the Texas Secretary of State, and does not employ any Texas residents, recruit Texas residents to work for Transportes Mexico, advertise in "local Texas media," or own or lease any real property in Texas. Transportes Mexico has never sued anyone in Texas.

## D. Response to Special Appearance

From the record on appeal, it appears that the Deharos did not request or conduct any jurisdictional discovery following Transportes Mexico's special appearance. In their response to Transportes Mexico's special appearance, the plaintiffs argued that Transportes Mexico had understated its contacts with the United States and its relationship with affiliates Transportes Texas and Chavez LLC.

### 1. Corporate entities and Juan Chavez

According to the plaintiffs, at the time of the accident, Chavez and Rodriguez owned and operated multiple entities in the United States and Mexico. Chavez has dual United States and Mexican citizenship, is involved in the

management of both Transportes Texas and Transportes Mexico, and is paid a salary by both Transportes Texas and Transportes Mexico.

The plaintiffs alleged that Transportes Texas is a Texas corporation with its principal place of business in Harris County, Texas. Transportes Texas has been in business since 1992 and incorporated since 2000. Rodriguez owns 51% of Transportes Texas and Chavez owns 49%.

The plaintiffs alleged that Transportes Mexico is a Mexican corporation owned by Chavez alone or in combination with Rodriguez.[2] Chavez is involved in hiring drivers for Transportes Mexico, was involved in hiring the driver who was operating the bus at the time of the accident at issue, and "retained" the driver as a Transportes Mexico driver after the accident. Chavez travels to Mexico once a month for five to seven days to manage Transportes Mexico.

The plaintiffs alleged that Chavez LLC was a Texas LLC that Chavez formed on January 21, 2015. Chavez was the sole owner of Chavez LLC and voluntarily terminated Chavez LLC on December 1, 2022. Chavez LLC, Chavez International, Inc. (Chavez Inc.), or both had their own bus facility and Department of Transportation registration. Chavez LLC, Chavez Inc., or both were "involved in the ownership, leasing, and maintenance" of the bus at issue.

---

[2]     The record on appeal contains inconsistent evidence of the ownership of Transportes Mexico. In their most recent deposition testimony, Chavez and Rodriguez agreed that Chavez was the sole owner of Transportes Mexico at the time of the accident.

The plaintiffs alleged that Chavez Inc. was a Texas corporation solely owned by Chavez with its principal place of business in Harris County. Chavez Inc. was also voluntarily terminated in December 2022.

The plaintiffs alleged that International Charter Services, Inc. (ICS) was formed by Rodriguez in 2004 and also owned buses for charters, travel, and leasing. ICS provided services similar to those provided by Transportes Texas. Chavez did not have an interest in ICS, which was eventually voluntarily terminated.

The plaintiffs alleged that Chavez and Rodriguez admitted that they "owned commercial transportation companies prior to the [accident] which have been involved in lawsuits where personal injuries are alleged."

### 2. Transportes Mexico, Transportes Texas, and Chavez LLC operations

According to the plaintiffs, at the time of the accident, Transportes Texas provided bus transportation on just one route: from Houston, Texas, to the Mexican cities of San Luis Potosí and Rio Verde, both of which are located in the Mexican state of San Luis Potosí. Transportes Texas's Houston facility serves as Transportes Texas's office, Transportes Texas's bus terminal, Transportes Texas's bus storage location, and Chavez's residence. Buses owned, operated, and leased by Transportes Mexico, Transportes Texas, and Chavez LLC are stored at the

13

facility and, according to the plaintiffs, all of those entities use the facility as their terminal.[3]

The plaintiffs alleged that, at the time of the accident, Transportes Mexico owned eight buses, Transportes Texas owned eight to twelve buses, and Chavez LLC owned one bus. The companies leased buses from each other as needed. Regardless of which entity owned or leased a given bus, under an interline agreement the bus would operate under Transportes Texas's DOT registration in Texas and Transportes Mexico's registration in Mexico. According to the plaintiffs, each of the buses has Transportes Mexico and Transportes Texas's names on it and both United States and Mexico license plates.[4]

The plaintiffs alleged that, under interline agreements among the companies, drivers for the United States entities drive only in the United States and drivers for the Mexican entities drive only in Mexico. Passengers buying tickets in the United

---

[3]     The plaintiffs cited three exhibits as support for their claim that Transportes Mexico uses Transportes Texas's Houston facility as a terminal—exhibits 12, 21, and 22. But the version of their response to Transportes Mexico's special appearance that is in the appellate record does not include exhibits 21 and 22. Exhibit 12 is a declaration from Chavez that does not reference any use of Transportes Texas's Houston facility by Transportes Mexico. Chavez states in his declaration that Transportes Mexico operates solely in Mexico and does not own or lease any real property in Texas.

[4]     The plaintiffs' support for this assertion is deposition testimony by Chavez in response to the question: "You don't tell them it's a different actual company that's taking them to their destination. You just tell them there's a different insurance company involved. Correct?" Chavez responded, through an interpreter: "Well, they see that the front has two license plates, two names. So they see that the bus goes to both places."

14

States are not told that, in Mexico, the bus will be operated by a Mexican driver who is not required to operate in a manner that complies with FMCSA.

The plaintiffs alleged that Transportes Texas acts as Transportes Mexico's agent in booking a service to be performed by Transportes Mexico. The plaintiffs claimed that, under interline agreements, Transportes Mexico benefited from: (1) leasing its buses to the other entities; (2) generating revenue from tickets sold in Mexico for travel from Mexico to the U.S.; (3) not having to comply with the FMCSA, and thus being able to cut corners on maintenance and training; (4) being able to shield itself from liability; and (5) being able to perform maintenance on all buses in Mexico at lower cost. The plaintiffs claimed further that Transportes Mexico drivers are "permitted, encouraged, and trained to flee the scene" of any accident to avoid being taken into custody[5]—impeding any investigation into the cause of the accident.

---

[5]    In the testimony the plaintiffs cite as support for this assertion, Chavez, through an interpreter, characterized his understanding of the requirements of Mexican law, including Mexican "insurance law." Chavez claimed that, under Mexican law, a driver involved in an accident must first help anyone injured but, then, must leave the scene to avoid being taken into police custody "because later on the insurance can have a hard time getting them out on bail." He testified that Transportes Mexico drivers are thus trained "[f]irst to help the people" and then to leave before the police arrive. Neither party cites any legal authority supporting Chavez's understanding of Mexican law.

### 3. December 21, 2019 accident

According to the plaintiffs, Maribel and Hipolito purchased their bus tickets from Transportes Texas in Harris County on December 9, 2019. The bus at issue was owned by Transportes Mexico, but leased to Chavez LLC (or Transportes Texas) and operated by Transportes Texas. A Transportes Texas employee named Quinn drove the bus from Houston to the Texas–Mexico border in Laredo, Texas. At the border, a Transportes Mexico employee named Felipe Martinez took over as driver. Martinez fled the scene of the accident and could not be found for two weeks.

## E. Trial Court Order

On August 12, 2024, the trial court denied Transportes Mexico's special appearance. This appeal followed.

## Special Appearance

In its appeal, Transportes Mexico argues that: (1) any finding of specific jurisdiction over Transportes Mexico was not supported by legally sufficient evidence, (2) any implicit finding of general jurisdiction over Transportes Mexico was erroneous, (3) legally and factually insufficient evidence supports any finding that Transportes Mexico and Transportes Texas are alter egos, and (4) the Deharos' conspiracy allegation is conclusory.

## A.      Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law that we review de novo. *LG Chem Am., Inc. v. Morgan*, 670 S.W.3d 341, 346 (Tex. 2023); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the ruling and supported by evidence are implied. *Bell*, 549 S.W.3d at 558. We presume that the trial court resolved all factual disputes in favor of its ruling. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 871-72 (Tex. 2010). When, as here, the appellate record includes the reporter's record, the appellant may challenge the legal and factual sufficiency of the evidence supporting implied findings in the same manner as if they were jury findings or express findings by the trial court. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017).

We review any challenged factual findings using the same standards that we use to review jury findings. *Wash. DC Party Shuttle, LLC v. IGuide Tours, LLC*, 406 S.W.3d 723, 729 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). When reviewing a finding for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *Id*. We credit favorable evidence if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not.

*Id*. Evidence is legally insufficient to support the implied finding only if: (1) the record bears no evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Bradberry*, 526 S.W.3d at 480.

When we review the factual sufficiency of the evidence supporting an implied finding, we consider all the evidence and will set aside the finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Wash. DC Party Shuttle*, 406 S.W.3d at 729. If the evidence supports the implied fact finding, we must uphold the trial court's judgment on any legal theory supported by the evidence. *Id.*

**B.    Exercise of Personal Jurisdiction**

Texas courts may exercise personal jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes it and (2) doing so comports with federal and state due-process guarantees. *Goldstein v. Sabatino*, 690 S.W.3d 287, 294 (Tex. 2024) (citing *Bell*, 549 S.W.3d at 558). The long-arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that "does business" in Texas. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE § 17.042). Under the long-arm

statute, a nonresident does business in Texas if, "[i]n addition to other acts that may constitute doing business," the nonresident (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas; (2) commits a tort in whole or in part in Texas; or (3) recruits Texas residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas. TEX. CIV. PRAC. & REM. CODE § 17.042.

Personal jurisdiction over a nonresident defendant is constitutional if: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant establishes minimum contacts with a forum state if it purposefully avails itself of the privileges and benefits of conducting business within the forum state. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)). "Because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system, the minimum contacts analysis is particularly important when the defendant is from a different country." *Id.*

A defendant's contacts with the forum may give rise to either general or specific jurisdiction. *Bell*, 549 S.W.3d at 559. If the plaintiff's claims are unrelated to the defendant's forum contacts, the court's exercise of jurisdiction is an exercise

of "general jurisdiction," and the minimum-contacts test is satisfied only if the defendant's affiliations with the state are so substantial, continuous, and systematic as to make the defendant essentially at home in the state. *TV Azteca, S.A.B. de C.V. v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016).

Specific jurisdiction applies to defendants less closely connected with the forum state, but only as to a narrower class of claims than general jurisdiction would cover. *BRP-Rotax GmbH & Co. v. Shaik*, 716 S.W.3d 98, 104 (Tex. 2025) (citing *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 359 (2021)). Under *Ford*, specific jurisdiction exists when, not only has the defendant taken some act by which it purposefully availed itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of its laws, the plaintiff's claims "arise out of or relate to" that Texas-focused activity. *Id.* (citing *Ford*, 592 U.S. at 141; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 430 (Tex. 2023). An affiliation must exist between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation. *Volkswagen Aktiengesellschaft*, 669 S.W.3d at 430 (citing *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1780 (2017)). That relationship does not have to be causal. *Id.* at 430-31 (citing *Ford*, 141 S. Ct. at 1026). However, the jurisdictionally relevant activities must be

20

the defendant's own choice and justify a conclusion that the nonresident defendant could reasonably anticipate being called into a Texas court with respect to a particular claim. *Ford*, 592 U.S. at 359, 364; *BRP-Rotax*, 716 S.W.3d at 104 (citing *Ford*, 592 U.S. at 359; *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

When personal jurisdiction is challenged, the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Bell*, 549 S.W.3d at 559. The trial court may consider the plaintiff's original pleadings as well as the plaintiff's response to the defendant's special appearance in determining whether the plaintiff satisfied that initial burden. *Graves v. DJO, LLC*, 636 S.W.3d 321, 325 (Tex. App.—Fort Worth 2021, pet. denied); *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 135 (Tex. App.—Houston [1st Dist.] 2020, no pet.). In conducting our review, we accept as true the plaintiff's pleadings and allegations, and review the pleadings and allegations in the light most favorable to the plaintiff. *Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 835 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). If the plaintiff fails to plead facts bringing the defendant within the reach of the long-arm statute, the defendant need only prove that it does not live in Texas to negate jurisdiction. *Hartley*, 617 S.W.3d at 135 (citing *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658-59 (Tex. 2010)).

21

If the plaintiff meets its initial pleading burden, the burden shifts to the defendant to negate all bases of personal jurisdiction alleged by the plaintiff. *LG Chem Am., Inc. v. Morgan*, 663 S.W.3d 217, 230 (Tex. App.—Houston [1st Dist.] 2020) (citing *Bell*, 549 S.W.3d at 559), *aff'd*, 670 S.W.3d 341 (Tex. 2023). The defendant can negate jurisdiction on either a factual or a legal basis. *Id.* (citing *Kelly*, 301 S.W.3d at 659). Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id*. (citing *Kelly*, 301 S.W.3d at 659). The plaintiff can then respond with its own evidence affirming its allegations and, if it does not present evidence establishing personal jurisdiction, it risks dismissal of its suit. *Id*. (citing *Kelly*, 301 S.W.3d at 659). The defendant is then allowed to show that, even if the plaintiff's alleged facts are true: the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas do not constitute purposeful availment; for specific jurisdiction, the claims do not arise from the contacts with Texas; or the exercise of jurisdiction offends traditional notions of fair play and substantial justice. *Id*. (citing *Kelly*, 301 S.W.3d at 659).

If the defendant produces credible evidence negating all bases of jurisdiction, the plaintiff bears the ultimate burden to establish that the Texas court has personal jurisdiction over the defendant as a matter of law. *Hartley*, 617

S.W.3d at 135; *Riviera Operating Corp. v. Dawson*, 29 S.W.3d 905, 908 (Tex. App.—Beaumont 2000, pet. denied).

## C.     General Jurisdiction

In its second point of error, Transportes Mexico argues that any implicit finding of general jurisdiction over Transportes Mexico was erroneous. In its third point of error, Transportes Mexico argues that, to the extent that the trial court concluded it had general jurisdiction over Transportes Mexico based on a finding that Transportes Mexico and Transportes Texas are alter egos, legally and factually insufficient evidence supports that finding.

### 1.     Alter-ego allegation

The Deharos argue that Transportes Texas and Transportes Mexico are alter egos because: (1) the corporations have the same owners and managers, Chavez and Rodriguez; (2) Chavez owns and manages both Chavez LLC and Chavez Inc.; (3) Chavez viewed Transportes Texas, Transportes Mexico, Chavez LLC, and Chavez Inc. as a single enterprise or job; (4) Transportes Texas and Transportes Mexico commingle possession and operation of their buses; (5) the inter-company agreements are so complex that the defendants were unable in discovery to identify who owns Transportes Mexico[6] and the bus involved in the accident at issue;[7] and

---

[6]     As noted above, from the record on appeal, it appears that the Deharos did not request or conduct any jurisdictional discovery following Transportes Mexico's special appearance. In their written discovery responses, Chavez and Rodriguez

23

(6) bus maintenance and inspections were shared costs regardless of the bus owner. The Deharos liken the facts at issue to those in *Finegan v. Autotransportes Tufesa S.A. de C.V.*, No. CV 07-693-TUC-FRZ, 2009 WL 331349 (D. Ariz. Feb. 11, 2009), in which an Arizona federal district court imputed the United States contacts of a United States bus company to its Mexican affiliate bus company based on a finding that the two companies were joint venturers.[8]

The applicable Texas law differs from the Arizona court's interpretation of federal law in *Finegan*. Under Texas law, the "[c]reation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008). Because Texas law presumes that two separate corporations are

---

stated that they were both owners of Transportes Mexico. In their deposition testimony, Chavez and Rodriguez ultimately agreed that Chavez was the sole owner of Transportes Mexico at the time of the accident.

[7]  In both his written discovery responses and deposition testimony, Chavez identified Transportes Mexico as the owner of the bus.

[8]  Other federal courts have held that a co-venturer's contacts cannot automatically be imputed to other co-venturers to establish personal jurisdiction. *See Gonzalez-Pozo v. Empire Fire & Marine Ins. Co.*, No. 223CV00589 GMNBNW, 2023 WL 8111753, at *3 (D. Nev. Nov. 22, 2023) (noting holding in *Finegan* but also that "the existence of a joint venture does not necessarily mean a court may automatically impute the minimum contacts of one co-venturer to another" (citing *Resnick v. Rowe*, 283 F. Supp. 2d 1128, 1139 (D. Haw. 2003))). "For instance, courts in other circuits have specified that to impute one co-venturer['s] contacts to another member of the joint venture, 'the member's activities in the forum must be related to the joint venture's business *and* the other members or the association itself must have exercised substantial influence over the member's decision to carry on those activities.'" *Id.* (quoting *Dunn v. A/S Em. Z. Svitzer*, 885 F. Supp. 980, 985 (S.D. Tex. 1995)).

indeed distinct entities, a party seeking to ascribe one corporation's contacts with Texas to another by disregarding their distinct corporate entities must prove that an alter-ego relationship exists. *Wash. DC Party Shuttle*, 406 S.W.3d at 738-39; *BMC Software*, 83 S.W.3d at 798-99.

Jurisdictional veil-piercing and substantive veil-piercing involve different elements of proof. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174 (Tex. 2007). To "fuse" separate entities for jurisdictional purposes, a plaintiff must prove that one entity controls the internal business operations and affairs of the other. *PHC-Minden*, 235 S.W.3d at 175 (citing *BMC Software*, 83 S.W.3d at 799). The degree of control "must be greater than that normally associated with common ownership and directorship." *Id*. at 175 (quoting *BMC Software*, 83 S.W.3d at 799). Factors to consider include whether the corporations have separate headquarters, whether the corporations observe corporate formalities, the amount of stock the alleged controlling corporation owns in the alleged controlled corporation, and the degree of control the former exercises over the latter's general policy and administration. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013) (citing *PHC-Minden*, 235 S.W.3d at 175). However, one corporation will not be regarded as the alter ego of another "merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *PHC-Minden*,

235 S.W.3d at 175 (quoting *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)). The evidence must show that "the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* (quoting *BMC Software*, 83 S.W.3d at 799).

A finding that Transportes Mexico entered into a joint venture with Transportes Texas would be relevant to a determination of Transportes Mexico's liability for Transportes Texas's conduct in Texas, but would not make such conduct automatically imputable to Transportes Mexico for jurisdictional purposes. *See PHC-Minden*, 235 S.W.3d at 174-75 (discussing factors relevant to "fusing" entities for jurisdictional rather than liability purposes, including degree of control greater than that normally associated with common ownership and directorship); *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 334 (Tex. App.—Fort Worth 2009, no pet.) ("Whether Gordon entered into a joint venture with Bailey or otherwise retained joint responsibility for Bailey's conduct in Texas is relevant only to Gordon's liability on the merits. It does not constitute purposeful availment by any activities by Gordon in Texas so as to establish minimum contacts." (citing *PHC-Minden*, 235 S.W.3d at 174)); *see also Waller Marine, Inc. v. Magie*, 463 S.W.3d 614, 620-21 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Whether the parties' agreement created a partnership bears upon the question of liability for

26

the alleged breach, not upon the question of jurisdiction." (citing *PHC-Minden*, 235 S.W.3d at 174-75; *Gordon & Doner*, 287 S.W.3d at 334)).

With reference to the factors we must consider under *PHC-Minden*, the Deharos have alleged that Transportes Texas is headquartered and has its principal place of business in Harris County, Texas, and that Transportes Mexico has its principal place of business in San Luis Potosí, Mexico. The Deharos have not alleged or shown that the companies have the same headquarters. Nor have they alleged or shown that Transportes Texas or Transportes Mexico has an ownership interest in or control over the other's general policy or administration.[9] The fact that Transportes Texas operates and performs maintenance on Transportes Mexico buses that travel into Texas and Transportes Mexico operates and performs maintenance on Transportes Texas buses that travel into Mexico is a factor to be weighed in assessing the extent to which the two bus companies observe corporate formalities. However, the evidence also shows that the companies: (1) employed separate managers and bus drivers and separately supervised the drivers,[10]

---

[9] In the trial court and on appeal, the Deharos have maintained that Transportes Mexico is controlled by either Chavez alone or Chavez in combination with Rodriguez.

[10] *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 799-800 (Tex. 2002) (rejecting alter-ego claim based in part on weight of evidence allegedly showing that employees of one corporation controlled marketing and human resources for other).

27

(2) operated buses and ticket sales in separate geographic territories,[11] (3) maintained separate insurance,[12] (4) owned separate buses,[13] (5) entered into leases with respect to buses that are temporarily operated by the other company,[14] and (6) maintained separate revenue streams from ticket sales.[15] Viewing all the evidence in the light most favorable to the Deharos, the Deharos have not met their burden of establishing that Transportes Texas and Transportes Mexico ceased to be separate to the extent that, under applicable Texas law, the corporate fiction should be disregarded to prevent fraud or injustice. *See PHC-Minden*, 235 S.W.3d at 175.

---

[11]    *See Transportes Zima Real S.A. de C.V. v. Benitez*, No. 14-22-00388-CV, 2023 WL 2026767, at *6 (Tex. App.—Houston [14th Dist.] Feb. 16, 2023, pet. denied) (mem. op.) (rejecting alter-ego claim where "overwhelming weight of the evidence indicate[d] that Transportes is a Mexican corporation operating solely in Mexico, and Zima Real is a Texas limited liability company operating solely in Texas").

[12]    *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007) (rejecting alter-ego claim based in part on consideration of extent to which one corporation provided insurance for other).

[13]    *See Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 606 (Tex. App.—Dallas 2010, no pet.) (rejecting alter-ego claim based in part on consideration of extent to which one corporation provided equipment for other).

[14]    *See Costamare, Inc. v. Mamou*, No. 01-23-00865-CV, 2025 WL 863779, at *10 (Tex. App.—Houston [1st Dist.] Mar. 20, 2025, no pet.) (mem. op.) (rejecting alter-ego claim based in part on existence of inter-company contracts that did not give one company control over other).

[15]    *See Costamare*, 2025 WL 863779, at *10 (rejecting alter-ego claim based in part on fact that one company's income did not simply pass through to other); *Benitez*, 2023 WL 2026767, at *6 (rejecting alter-ego claims based in part on fact that companies did not share revenue).

Our conclusion is consistent with our sister court's holding, in *Transportes Zima Real S.A. de C.V. v. Benitez*, No. 14-22-00388-CV, 2023 WL 2026767 (Tex. App.—Houston [14th Dist.] Feb. 16, 2023, pet. denied) (mem. op.), that the plaintiffs did not meet their evidentiary burden in establishing an alleged alter-ego relationship between a Mexican bus company and domestic bus company despite evidence of an overlap in the companies' management and ownership, that employees of the Mexican company lived and worked in Texas, that the Mexican company had registered property in Texas, and that the Mexican company advertised itself and the domestic company as a single company. *Id.* at *5-7. The court of appeals in *Benitez* noted that the weight of the evidence was that the Mexican company operated solely in Mexico, the domestic company operated solely in the United States, and the two companies observed corporate formalities. *Id.* at *6. The same is true here.

## 2.     Other allegations

Because we find that Transportes Texas and Transportes Mexico were not alter egos, we do not impute Transportes Texas's contacts with Texas to Transportes Mexico. We thus consider whether Transportes Mexico's contacts with Texas are, on their own, sufficient to support the trial court's exercise of general jurisdiction over Transportes Mexico. The Deharos argued in the trial court and argue again on appeal that Transportes Mexico's relevant contacts with Texas

include: (1) Transportes Mexico is owned and controlled by Texas residents Chavez and Rodriguez; (2) Transportes Mexico entered into contracts with Transportes Texas and Chavez LLC; (3) Transportes Mexico buses routinely traveled into Texas, bringing Mexicans to Texas and Texans to Mexico; and (4) when they traveled into Texas, the Transportes Mexico buses were leased by Transportes Texas or Chavez LLC, operated by a driver employed by Transportes Texas or Chavez LLC, operated under Transportes Texas's DOT registration, and sometimes inspected and maintained in Texas.[16]

We disregard Chavez and Rodriguez's Texas contacts because, even viewing the evidence in the light most favorable to the Deharos, the Deharos have not shown that Chavez and Rodriguez were alter egos of Transportes Mexico. *See BMC Software*, 83 S.W.3d at 799 (noting that alter-ego parent's contacts can be imputed to subsidiary for jurisdictional purposes, but that exercise of control that stock ownership gives to stockholders is not enough to establish alter-ego relationship). While the Deharos allege that Chavez alone, or Chavez and

---

[16] The Deharos also assert that Transportes Mexico routinely used Transportes Texas's terminal in Texas to sell tickets to Texas residents, store Transportes Mexico buses, and as a terminal. *See Pulmosan Safety Equip. Corp. v. Lamb*, 273 S.W.3d 829, 835 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (noting that, in determining jurisdictional pleas asserted by a defendant, we begin our review by taking plaintiff's allegations as true). Transportes Mexico negated those assertions with evidence that it does not have an office, operations, or facilities—including a bus yard—in Texas. *See LG Chem Am., Inc. v. Morgan*, 663 S.W.3d 217, 230 (Tex. App.—Houston [1st Dist.] 2020) (noting that defendant can negate jurisdiction on factual basis), *aff'd*, 670 S.W.3d 341 (Tex. 2023).

Rodriguez together, controlled Transportes Mexico, they have neither alleged nor shown a degree of control over Transportes Mexico that exceeds that which Chavez and Rodriguez would have as its owners. *See PHC-Minden*, 235 S.W.3d at 175 (holding that, to "fuse" parent and subsidiary for jurisdictional purposes, plaintiff must prove parent exercises greater control than that normally associated with common ownership and directorship (citing *BMC Software*, 83 S.W.3d at 799)). The evidence submitted by Transportes Mexico regarding the operations of Transportes Mexico and its relationship to Transportes Texas negates any argument by the Deharos that can be interpreted as an allegation that Transportes Mexico and its ownership disregarded the corporate formalities that separate them. And the mere fact that Transportes Mexico is owned by Texas residents is insufficient support for a finding of general jurisdiction. *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 78 (Tex. 2016) ("[A]n entity's mere ownership in the forum state is insufficient for that state to have general jurisdiction over the subsidiary defendant.").

The Deharos also have not shown that the alleged contracts between Transportes Mexico and Transportes Texas and Chavez LLC constitute continuous and systematic contacts making Transportes Mexico essentially "at home" in Texas. Whether a nonresident's contracts support a finding that the nonresident invoked the benefits and protections of Texas law to the extent necessary to

31

support a finding of general jurisdiction depends on factors including the scope of the contracts, their terms, and the circumstances surrounding their execution. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 787, 792 (Tex. 2005) (noting that jurisdictional analysis includes factors such as whether contract involves many contacts with forum over long period of time, and forum chosen in any forum-selection clause); *Coleman*, 83 S.W.3d at 808 (holding that nonresident's contracts with Texas residents did not support finding of general jurisdiction because nonresident did not sign or perform contracts in Texas); *Mateer v. Cabool Lease, Inc.*, No. 2-09-297-CV, 2010 WL 1509691, at *3 (Tex. App.—Fort Worth Apr. 15, 2010, no pet.) (mem. op.) (holding that nonresident defendant's leasing or selling milk trailers and trucks for decade to third-party company that did business in Texas did not constitute continuous and systematic contacts with Texas because transactions were executed outside Texas and third party's business activities in Texas had no jurisdictional relevance).

The record includes some testimony regarding the terms of what the parties generally refer to as an "interline" or "interchange" agreement but no copy of the agreement. *See APPA Tech. Corp. v. Mitchell*, 225 S.W.3d 812, 819 (Tex. App.—Dallas 2007, pet. denied) (reversing denial of special appearance based in part on lack of evidence of purposeful availment, noting that, while plaintiff alleged that nonresident defendant caused product to be sold in Texas by entering into

distribution agreement, "[t]he evidence in the record, however, does not include a copy of the distribution agreement, any language from the agreement, or what the distribution agreement mandated"). To the extent there are independent agreements pursuant to which Transportes Mexico and Transportes Texas "lease buses owned by the other company for operations as needed," they are also not part of the record.

From the evidence we do have of the terms of the interline agreement, it appears to have been structured so that Transportes Mexico operates solely in Mexico and Transportes Texas operates solely in Texas. *See Coleman*, 83 S.W.3d at 808 (holding that, when nonresident defendant purposefully structures transactions to avoid benefits and protections of forum's laws, legal fiction of consent that supports general jurisdiction no longer applies). As the interline agreement is described in the testimony, it is very similar to the "interchange" agreement between a Texas bus company and Mexican bus company described in *Benitez*. *See Benitez*, 2023 WL 2026767, at *1 (in appeal from denial of Mexican bus company's special appearance, describing interchange agreement as including arrangement pursuant to which driver employed by Mexican bus company would carry passengers on buses owned by that company to Texas–Mexico border, at which time driver employed by Texas bus company leasing buses would drive buses to destinations within United States, with each company having exclusive

use, possession, and control over operations in its respective country). In *Benitez*, the court of appeals concluded that insufficient evidence supported the trial court's implied findings that the Mexican and Texas bus companies were alter egos and that the Mexican bus company's contacts with Texas were sufficient to support the exercise of general jurisdiction. 2023 WL 2026767, at *7. We reach the same conclusion here because the uncontradicted evidence shows that each of Transportes Mexico and Transportes Texas maintained separate operations on its side of the Unites States-Mexico border.

We thus conclude that general jurisdiction does not exist over Transportes Mexico and sustain Transportes Mexico's second and third points of error.

## D. Specific Jurisdiction

In its first point of error, Transportes Mexico contends that any finding of specific jurisdiction over Transportes Mexico was not supported by legally sufficient evidence. As discussed above, the Deharos argue that Transportes Mexico's relevant contacts with Texas include the following: Transportes Mexico entered into contracts with Transportes Texas and Chavez LLC; Transportes Mexico buses routinely traveled into Texas, bringing Mexicans to Texas and Texans to Mexico; and, when they traveled into Texas, the Transportes Mexico buses were leased by Transportes Texas or Chavez LLC, operated by a driver employed by Transportes Texas or Chavez LLC, operated under Transportes

Texas's DOT registration, and sometimes inspected and maintained in Texas. In arguing that specific jurisdiction exists over Transportes Mexico, the Deharos note further that Maribel and Hipolito purchased their tickets for the bus involved in the accident from Transportes Texas in Harris County.

Transportes Mexico disputes that it purposefully availed itself of the benefits of Texas law. For example, Transportes Mexico argues that it "acknowledges it and Transportes [Texas] are involved in an interline agreement and that some bus[es] are leased between the companies," but that "substantial efforts were undertaken to separate and isolate their respective activities, with Transportes [Texas] operating in the United States, and Transportes [Mexico] in Mexico, exclusively." However, in arguing that legally insufficient evidence supports the exercise of specific jurisdiction over Transportes Mexico, Transportes Mexico focuses on the relatedness prong of the specific jurisdiction analysis.

Transportes Mexico contends that legally insufficient evidence supports the trial court's conclusion that a "substantial connection" exists between Transportes Mexico's Texas contacts and the operative facts of the litigation. Transportes Mexico argues that the Deharos' claims relate to the allegedly negligent operation of the bus involved in the accident at issue and the training and supervision of its driver, all of which occurred in Mexico. Transportes Mexico cites as support the decisions in *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007),

*Benitez*, and *Transportes de Zima Real S.A. de C.V. v. Lizarraga*, No. 14-13-00933-CV, 2014 WL 3512858 (Tex. App.—Houston [14th Dist.] July 15, 2014, no pet.) (mem. op.). The Deharos, on the other hand, contend that the facts in those cases are distinguishable from those at issue. The Deharos argue that, but for the interline agreement, the bus would have been owned and operated by Transportes Texas in compliance with FMCSA regulations throughout its journey. In addition, the Deharos note that the driver was hired by Chavez, an owner of both Transportes Mexico and Transportes Texas.[17]

The claims at issue in *Moki Mac* arose from a Texas resident's death during an Arizona hiking and rafting expedition that was booked in Texas and organized by a Utah-based company that sent marketing materials to Texas. *Moki Mac*, 221 S.W.3d at 573. In making its specific jurisdiction determination, the supreme court declined to apply a "but-for" relatedness test under which "a cause of action arises from or relates to a defendant's forum contacts when, but for those contacts, the cause of action would never have arisen." *Id.* at 580-81. Instead, it held that, "for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation." *Id.* at 585 (citing *Guardian Royal Exch. Assurance, Ltd. v. Eng. China Clays, P.L.C.*, 815 S.W.2d 223, 229-33 (Tex. 1991);

---

[17] As discussed above, we disregard Chavez's Texas contacts because the Deharos have not shown that Chavez and Transportes Mexico were alter egos.

36

*Rush v. Savchuk*, 444 U.S. 320, 329 (1980)); *see also Ford*, 592 U.S. at 352 (holding that required connection between plaintiff's suit and defendant's activities does not need to be causal); *LG Chem*, 670 S.W.3d at 347 (noting that, "while a plaintiff need not establish a strict causal relationship between the defendant's contacts and the plaintiff's claim, neither is it the case that anything goes" (citing *Ford*, 141 S. Ct. at 1026) and that, to satisfy relatedness prong of minimum contacts analysis in specific jurisdiction context, "the plaintiff must demonstrate a 'substantial connection' between the defendant's contacts and the operative facts of the litigation" (citing *Moki Mac*, 221 S.W.3d at 585)). The operative facts on which the supreme court focused in *Moki Mac* were those events that "[would] be the focus of the trial, [would] consume most if not all of the litigation's attention, and [to which] the overwhelming majority of the evidence [would] be directed," namely, events that occurred in Arizona. *Moki Mac*, 221 S.W.3d at 585.

The supreme court concluded that specific jurisdiction did not exist over the Utah company because the injuries for which the plaintiffs sought recovery were based on the Texas resident's death in Arizona, and the relationship between the operative facts of the litigation and the Utah company's activities in Texas were "too attenuated to satisfy specific jurisdiction's due-process concerns." *Id.* at 588. In reaching its decision, the supreme court cited multiple decisions in which a court had concluded that, even if a commercial transaction in the forum preceding

a travel-related injury outside the forum could be considered a but-for cause of the injury, it was an insufficient basis for establishing personal jurisdiction. *See, e.g.*, *id.* at 582-83 (citing *Gelfand v. Tanner Motor Tours*, 339 F.2d 317, 321–22 (2d Cir.1964) (holding in case in which plaintiffs had sued nonresident bus company for injuries sustained in accident that sale of bus tickets in New York was insufficient basis for personal jurisdiction because claims did not arise from sale of tickets); *Reich v. Signal Oil & Gas Co.*, 409 F. Supp. 846, 852 (S.D. Tex. 1974) (concluding that contract signed in Texas to build helicopter that crashed in Ghana, killing two oil rig workers, was too tenuous a contact to say that tort arose from it)).

*Lizarraga* and *Benitez* both involved facts similar to those at issue. In each, a Mexican company that owned buses contracted with a Texas company that owned buses to transport passengers between Mexico and the United States. *See Benitez*, 2023 WL 2026767, at *1; *Lizarraga*, 2014 WL 3512858, at *1. Pursuant to the bus companies' agreement, regardless of which company owned the bus making a given trip across the border, a driver employed by the Mexican bus company would drive the bus on the Mexican side of the border and a driver employed by the Texas company would drive the bus on the United States side of the border. *See Benitez*, 2023 WL 2026767, at *1; *Lizarraga*, 2014 WL 3512858, at *1. Each appeal involved claims arising from a bus accident that occurred in Mexico,

seeking damages for injuries suffered by one or more passengers who purchased their tickets in Mexico. *See Benitez*, 2023 WL 2026767, at *1; *Lizarraga*, 2014 WL 3512858, at *1, *3. In each case, the Fourteenth Court of Appeals reversed the trial court's denial of the Mexican bus company's special appearance on the grounds that there was no substantial connection between the nonresident's Texas contacts and the operative facts of the litigation. *See Benitez*, 2023 WL 2026767, at *3, *7; *Lizarraga*, 2014 WL 3512858, at *1.

The Deharos argue that *Moki Mac* is distinguishable because Transportes Mexico's relevant contacts with Texas are more extensive than the Utah company's, and that *Benitez* and *Lizarraga* are distinguishable because the plaintiffs in those cases purchased their bus tickets in Mexico. They argue further that Transportes Mexico was an undisclosed principal to the Texas transaction in which Maribel and Hipolito purchased their bus tickets. The Deharos direct our attention to *Bernice Claire Row Tr. v. Throckmorton Land & Cattle Co.*, 979 S.W.2d 383 (Tex. App.—Eastland 1998, no pet.), in which the court of appeals affirmed the denial of a special appearance by nonresident defendants based on evidence that they were undisclosed principals in connection with a contract for the pasturing of cattle that was executed in Texas, contemplated performance in Texas, and listed a Texas county as the venue for any dispute arising from the contract.

In the context of specific jurisdiction, the "minimum-contacts analysis is focused on the quality and nature of the defendant's contacts, rather than their number." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 67 (Tex. 2016) (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009)). The nonresident defendants' connection to the pasturing contract at issue in *Throckmorton Land & Cattle* supported the exercise of specific jurisdiction in that case because the plaintiff's claim was for breach of that contract. 979 S.W.2d at 384-85. Even assuming Transportes Mexico was an undisclosed principal to Maribel and Hipolito's purchase of their bus ticket, the Deharos' claims are tort claims based on allegedly negligent acts occurring in Mexico. Even if the ticket purchase was a but-for cause of the Deharos' injuries, under *Moki Mac*, which is controlling precedent, that is insufficient on this record to show a substantial connection between Transportes Mexico's Texas contacts and the operative facts at issue. *See also Ford*, 592 U.S. at 362 (holding that specific jurisdiction exists when plaintiff's claims "arise out of or relate to" defendant's forum contacts, and thus can exist even in absence of strict causal relationship, but noting "[t]hat does not mean anything goes"); *LG Chem*, 670 S.W.3d at 347 (same, noting plaintiff must demonstrate a substantial connection between defendant's contacts and operative facts of the litigation).[18] The fact that the ticket purchase at issue occurred in Texas

---

[18]     Neither party argues that the United States Supreme Court's 2021 holding in *Ford*

is thus not a basis on which to distinguish the facts at issue in this case from those at issue in *Benitez* and *Lizarraga*, at least for the purpose of addressing specific jurisdiction. *See also Fight Sports LLC v. Schneider*, No. 01-23-00897-CV, 2025 WL 2485681, at *9 (Tex. App.—Houston [1st Dist.] Aug. 29, 2025, no pet.) (mem. op.) (in case involving alleged sexual assault of plaintiff by her martial arts instructor, reversing denial of special appearance and holding that trial court did not have specific jurisdiction over nonresident defendant who sponsored instructor's P-1 visa because, even though nonresident defendant's purposeful contacts with Texas may have been but-for causes of assault, plaintiff's claims arose out of instructor's alleged misconduct and not nonresident defendant's Texas contacts (citing *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 157 (Tex. 2013))).

Here, as in *Benitez* and *Lizarraga*, there is no substantial connection between the Mexican bus company's Texas contacts and the operative facts. The Deharos' alleged injuries arise from a bus accident in Mexico. The operative facts underpinning the Deharos' claim that their injuries resulted from Transportes Mexico's negligence concern the Mexican driver's operation of the bus;

that specific jurisdiction can exist in the absence of a strict causal relationship if the plaintiff's claims "relate to" the defendant's forum contacts impacts *Moki Mac*'s application here. *Cf. Austin v. Extruded Aluminum Corp.*, No. 01-24-00435-CV, 2026 WL 488796, at *15 (Tex. App.—Houston [1st Dist.] Feb. 19, 2026, no pet. h.) (mem. op.) (Caughey, J., concurring) ("litigants and courts would benefit from clarity as to what exactly 'relate to' means, post-*Ford*").

Transportes Mexico's hiring, employment, training, and supervision of the driver; Transportes Mexico's maintenance of the bus;[19] Transportes Mexico's compliance with laws and regulations governing its operations; and Transportes Mexico's enforcement of its own safety rules, policies, and procedures—i.e., conduct that occurred largely if not entirely in Mexico. As discussed above, the record contains evidence that Transportes Mexico had the following Texas contacts: (1) ownership by one or more Texas residents; (2) contracting with Texas-based affiliates; and (3) pursuant to such contracting, permitting buses owned by Transportes Mexico to be operated and maintained in Texas by Texas-based affiliates to bring Mexicans to Texas and Texans to Mexico. While one or more of those contacts may be a but-for cause of the Deharos' alleged injuries, there is no substantial connection between those contacts and the operative facts. *See Moki Mac*, 221 S.W.3d at 585.

As noted above, Transportes Mexico, like the appellate courts in *Benitez* and *Lizarraga*, focuses on the relatedness prong of the specific jurisdiction analysis. Because we conclude that there is no substantial connection between Transportes Mexico's Texas contacts and the operative facts, we do not need to consider

---

[19] The Deharos allege that "most of the bus maintenance" was performed in Mexico, where it is "considerably cheaper." But they also cite testimony by Chavez that the bus at issue was maintained at times in Texas and note that one of Transportes Mexico's Texas-based affiliates hired a mechanic to perform maintenance on the bus in Texas in July 2019 after the bus was cited in Texas for violations "relating to lights and wheels." The Deharos do not, however, appear to allege that Transportes Mexico was involved in the July 2019 maintenance work in Texas or that the bus accident resulted from that work.

whether Transportes Mexico purposefully availed itself of the benefits of doing business in Texas. However, we note that the court of appeals in *Benitez* held that the interchange agreement between the Mexican and Texas bus companies was "insufficient evidence to establish that [the Mexican bus company] purposefully availed itself of the privilege of conducting business activities in Texas." 2023 WL 2026767, at *4.

## E. Conspiracy

In its fourth point of error, Transportes Mexico argues that the Deharos' conspiracy claim does not support the trial court's denial of its special appearance. In their pleading, the Deharos assert that Transportes Texas, Chavez, Rodriguez, Chavez LLC, Transportes Mexico, and "John Does 1-100" engaged in a conspiracy to operate a passenger bus business without complying with FMCSA regulations. Transportes Mexico notes that the Deharos did not repeat the assertion in their response to Transportes Mexico's special appearance. Transportes Mexico argues further that, in any case, the bare assertion of a conspiracy with Texas residents is insufficient to support personal jurisdiction over a nonresident defendant. We agree. *See Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995) ("[W]e decline to recognize the assertion of personal jurisdiction over a nonresident defendant based solely upon the effects or consequences of an alleged conspiracy with a resident in the forum state."); *Fjell Tech. Group v. Unitech Int'l,*

*Inc.*, No. 14-14-00255-CV, 2015 WL 457805, at *7 n.4 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. denied) (excluding conspiracy claim from jurisdictional analysis because personal jurisdiction over nonresident defendant cannot be based solely upon effects or consequences of alleged civil conspiracy, which is derivative tort).

We thus conclude that specific jurisdiction does not exist over Transportes Mexico and sustain Transportes Mexico's first and fourth points of error.

## Conclusion

Because we have concluded that the trial court has neither general nor specific jurisdiction over Transportes Mexico, we reverse the trial court's order denying Transportes Mexico's special appearance and render judgment dismissing for lack of jurisdiction the claims against Transportes Mexico brought by the Deharos.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.